```
 1              IN THE UNITED STATES COURT OF FEDERAL CLAIMS
 2
 3
 4    4DD HOLDINGS, LLC,                     )
 5            Plaintiff,                     ) Case No.
 6                vs.                        ) 15-945C
 7    THE UNITED STATES OF AMERICA,          )
 8            Defendant.                     )
 9
10
11                        Suite A-805
12              Court of Federal Claims Annex Building
13                      1401 H Street, N.W.
14                        Washington, D.C.
15                      Friday, July 21, 2017
16                           9:00 a.m.
17                   Telephonic Status Conference
18
19
20         BEFORE: THE HONORABLE ERIC G. BRUGGINK
21
22
23
24
25    Elizabeth M. Farrell, CERT, Digital Transcriptionist
```

| | | |
|---|---|---|
| 4DD Holdings, LLC v. USA | | 2<br>7/21/2017 |

```
 1   APPEARANCES:
 2   ON BEHALF OF THE PLAINTIFF:
 3            EDWARD H. MEYERS, ESQ.
 4            ROBERT B. GILMORE, ESQ.
 5            Stein, Mitchell, Cipollone Beato & Missner LLP
 6            1100 Connecticut Avenue, NW
 7            Suite 1100
 8            Washington, D.C. 20036
 9            (202) 737-7777 / (202) 296-8312 (fax)
10            emeyers@steinmitchell.com
11
12
13
14   ON BEHALF OF THE DEFENDANT:
15            JOHN JACOB TODOR, ESQ.
16            U.S. Department of Justice - Civil Division
17            Post Office Box 480
18            Ben Franklin Station
19            Washington, DC 20044
20            (202) 616-2382 / (202) 514-8640 (fax)
21            john.todor@usdoj.gov
22
23
24
25
```

4DD Holdings, LLC v. USA  3
  7/21/2017

```
 1   APPEARANCES (cont'd.):
 2   ON BEHALF OF THIRD PARTY DEFENDANT (KSJ):
 3             CHRISTINA HEISCHMIDT, ESQ.
 4             Dunlap Bennett & Ludwig
 5             8300 Boone Blvd.
 6             Suite 550
 7             Vienna, Virginia 22182
 8             (703) 442-3890 / (703) 777-3656 (fax)
 9             cheischmidt@dbllawyers.com
10
11
12   ON BEHALF OF THIRD PARTY DEFENDANT (IMMIX):
13             No representative present
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    P R O C E E D I N G S
 2                    -   -   -   -   -
 3             (Proceedings start mid-sentence, 9:01 a.m.)
 4             THE COURT:  Thank you.  And, Mr. Todor?
 5             MR. TODOR:  Yes, Your Honor.
 6             THE COURT:  And we have Mr. Meyers and I think
 7   you said someone else.
 8             MR. MEYERS:  Yes, Your Honor.
 9             THE COURT:  Go ahead.
10             MR. MEYERS:  No, I was just (inaudible).
11             THE COURT:  Okay, good.  So you have
12   recently -- I guess fairly recently joined as counsel for
13   the Plaintiff.  The reason I'm sort of bothering you
14   perhaps unnecessarily is the motion to quash by KSJ is
15   still floating around out there and I'm reluctant to
16   leave it in that posture.  So I wanted to find out about
17   that.
18             But, also, given the fact that we've had, in
19   the not too distant past, a number of -- hmm, I guess you
20   could say challenging discovery issues in this case, I
21   wanted to find out what the status of discovery is and if
22   you all have kind of reached a modus vivendi in moving
23   forward here.
24             So, Mr. Meyers -- well, let me start with Ms.
25   Heischmidt.  Do you still need the motion to quash to be
```

1   pending?
2           MS. HEISCHMIDT:  Thank you, Your Honor.  While
3   -- so, I -- I guess we would probably prefer to keep it
4   pending and then withdraw once we are -- once we get the
5   last piece in place.  But if that is not a possibility,
6   then we would just ask to withdraw it without prejudice.
7   That said, I am almost positive that it's not going to be
8   an issue.
9           The two big issues were the sheer volume of the
10  documents -- and this was not current counsel's search,
11  but just the sheer documents that originally populated
12  when we had filed the motion to quash, when we were
13  looking at the subpoena and even when the first set of
14  search terms came through.  And we have, in discussions
15  with counsel, brought that number down very
16  significantly.
17          And so that -- that also I'd like to point to
18  which was sheer cost because in the original search
19  terms, it would have been -- and I don't want to
20  misspeak, but it would have been, I think, over a month
21  of review with a full team of KSJ just to pull all of the
22  documents that would have populated.  And it would have
23  been mostly all irrelevant documents.  And so, obviously,
24  with it being brought down, it also brings the cost
25  concern down.

```
 1            So I think we are to the point -- the other
 2   point -- and so I think we have resolved that matter.
 3   The only other matter that is outstanding that we need to
 4   bring the DOJ attorney on is my clients are extremely
 5   concerned about breaching their nondisclosure clauses in
 6   producing these documents.  So they have provided a list
 7   of the contracting officers and they just need some sort
 8   of -- essentially a relief from liability on the
 9   disclosure of these.  They have reached out to the
10   contracting officers, but have heard nothing from them.
11            THE COURT:  Okay.  Mr. Todor, any light you can
12   shed on that?
13            MR. TODOR:  Well, I received an email from
14   Plaintiff's counsel about five minutes ago detailing the
15   request from KSJ with respect to the nondisclosure
16   agreements.  So I will speak with the agency about that.
17            In general, it was my understanding that the
18   agreement with respect to the protective order was meant
19   to address that insofar as third parties who had received
20   a subpoena would retain the obligation to review
21   documents for responsiveness, as well as the
22   confidentiality designations restricted to attorney's
23   eyes only that were set forth in the order.  It was my
24   understanding with Plaintiff's previous counsel that
25   Plaintiffs were to provide a copy of that protective
```

4DD Holdings, LLC v. USA                                        7/21/2017

```
 1   order to the third parties who were being issued
 2   subpoenas.
 3            So I'd first inquire whether KSJ, in fact,
 4   received that and is aware of those duties, and beyond
 5   that, I will defer to the client to see if there are any
 6   other issues with respect to the nondisclosure
 7   agreements.  But that was my understanding as to how that
 8   issue would be resolved.
 9            THE COURT:  So I gather there's a nondisclosure
10   agreement which I had forgotten about.  Does it cover
11   entities like KSJ that aren't parties?
12            MR. TODOR:  It's my understanding that the NDAs
13   were part of the contracts for the actual work that the
14   contractors were doing under their -- under the
15   contracts.
16            THE COURT:  Are you saying -- I was inquiring
17   about a nondisclosure or some sort of protective order
18   in this case, not necessarily in the contract.  Do we
19   have --
20            MR. TODOR:  Yes, there's a protective order in
21   this case.
22            THE COURT:  That does what?
23            MR. TODOR:  It's my understanding that the
24   protective order, I think, was issued in January for
25   third parties.  They would retain the obligation to make
```

```
 1   designations for confidentiality designations and then
 2   those would be submitted to Plaintiff's counsel on an
 3   attorney's eyes only basis, at which point the Government
 4   would have the opportunity to review the documents to see
 5   if there were any of those that needed to be -- that fit
 6   that level or -- and then after a certain period, they
 7   would be taken down to the restricted level in which they
 8   could be shared with the Plaintiff's client for purposes
 9   of assisting with the case only.
10           THE COURT:  Well, all right.  So there's
11   separately, I gather, an obligation by KSJ to the
12   Government not to breach some confidentiality
13   restriction.  And so who's in a position to tell me
14   whether or not the protocols of the protective order in
15   this case would protect KSJ and still allow it to produce
16   material to the Plaintiff?
17           Let me begin with Mr. Todor.  Do you have any
18   views on that?
19           MR. TODOR:  That was my understanding of how it
20   was meant to work.  I would request of the Court that we
21   -- since we just got the email from Plaintiff's counsel
22   right before the hearing that I be able to confer with
23   the client to see if there any other issues with respect
24   to KSJ's particular contract on that.  But that was my
25   understanding was that the -- under the auspices of the
```

```
 1    protective order, even though the contractor had a
 2    nondisclosure agreement with the Government as part of
 3    their government contract, they would be able to produce
 4    documents in response to the third party subpoenas in
 5    this case under the procedures set forth in the
 6    protective order.
 7            THE COURT:  Well, okay, I would like closure on
 8    that as quickly as possible so that KSJ's not in some
 9    ambiguous limbo land in terms of producing material.
10            MS. HEISCHMIDT:  If --
11            THE COURT:  Go ahead.
12            MS. HEISCHMIDT:  If I may interject, Your
13    Honor.  Also for some of the contracts, I think it's six
14    or seven of them, there are subcontractors as well under
15    the nondisclosure.  And so I think that adds an
16    additional element of concern because they're
17    corresponding with the -- you know, either L-3 or
18    Raytheon -- not Raytheon -- Booz-Allen, someone like
19    that.  So they just want some sort of confirmation other
20    than the protective order, you know, or at least a
21    confirmation from someone to them that the protective
22    order will cover those subcontracts, will cover
23    everything because there's a nondisclosure in all of
24    them.
25            THE COURT:  And who are you looking from
```

1   that -- for that assurance?
2          MS. HEISCHMIDT:  Preferably from Mr. Todor.  We
3   really wanted it from the contracting officers, but as
4   they did not respond and, obviously, they are not
5   familiar with this case, you know, that may not be a real
6   possibility.
7          THE COURT:  Well, one way or the other, I don't
8   want this to -- the uncertainty to hang up further
9   production.  So whatever it takes, Mr. Todor, if you can
10  satisfy yourself as to whether or not you or the CO or
11  somebody is in a position to give some cover for KSJ in
12  its production, and if that's not possible, then I want
13  you all to draft some sort of an amendment to the
14  protective order to allow it to happen.  I would assume
15  that a nondisclosure agreement would always be subject to
16  a court order to produce and so I'm prepared to do that.
17  But see if you all can -- see if you can all work it out
18  offstage.
19         Let's see, back to discovery in general.  Mr.
20  Meyers, have you sort of narrowed the scope of your
21  discovery or how are we proceeding?
22         MR. MEYERS:  Your Honor, I'm going to ask my
23  partner, Robert Gilmore, to take that one.  He's been
24  involved with the discovery issues.
25         THE COURT:  All right.

1      MR. GILMORE: Good morning, Your Honor, this is
2 Robert Gilmore. I've had -- since we've come onto the
3 case, you know, we've worked very hard to get up to speed
4 very quickly and we're looking forward to moving the case
5 forward in a timely and efficient way. We've had several
6 exchanges and meet-and-confer calls with Mr. Todor on
7 discovery issues that we identified as outstanding. I'm
8 happy to address, I think, a couple points.
9      He and I had a call on Wednesday and
10 specifically on two issues that I'm sure you're aware of
11 from prior hearings that, you know, I'm happy to discuss
12 with you. The first issue would be, as we reviewed the
13 transcripts from the prior hearings, and I think Your
14 Honor has identified a key issue in the case, we all
15 would agree, which is how many copies of the TETRA
16 software did the Government make or the Government's
17 contractor make.
18      And, you know, at this point in time, we don't
19 think that we yet have that answer from the Government.
20 What is the Government's position on how many copies have
21 been -- of the software have been installed, loaned,
22 copied, put up, taken down, from the various government
23 systems or government contractors' systems related to
24 this case.
25      And so we -- I asked Mr. Todor where the

```
 1   Government is on this and we think, at this point, what
 2   we're looking for really is the -- you know, a verified
 3   answer and we'd like that soon so that we can proceed
 4   with discovery with that information in hand.
 5            THE COURT:  Mm-hmm.  All right, Mr. Todor?
 6            MR. TODOR:  Well, the Government answered the
 7   interrogatory from Plaintiffs on the number of
 8   installations -- on the installations and changes.  We
 9   also --
10            THE COURT:  Is this the same --
11            MR. TODOR:  -- in the May hearing -- prior to
12   the May hearing, we sent the previous Plaintiff's counsel
13   a declaration from one of the engineers -- computer
14   engineers at DHA with respect to the change orders that
15   they had raised an issue with.  The Court had described
16   them as partial installs in the May hearing.  We don't
17   have any further information beyond what we've already
18   provided in our interrogatory response and in our
19   declaration with respect to the number of copies based on
20   the agency's investigation.
21            THE COURT:  Well, I'm not sure you all are on
22   the same page.  I hear Mr. Gilmore saying, in effect,
23   we're looking for more assurances and Mr. Todor saying,
24   you've got everything we can give you.
25            MR. GILMORE:  Your Honor, this is Robert
```

```
 1   Gilmore for the Plaintiffs.  We -- when Mr. Todor and I
 2   spoke on Wednesday, I guess one thing that kind of raised
 3   concern with us was he offered a formulation that I think
 4   we've seen before in some of the transcript hearings and
 5   some of the papers, that, you know, the parties had
 6   deemed that there was a set number of previously
 7   unauthorized copies of TETRA that were then reflected in
 8   the Government/Immix contract modification.
 9           And from our perspective, that sort of
10   sidesteps the issue.  We're not -- we don't want a number
11   on what was deemed by -- supposedly at a certain time, we
12   want what actually the number was and not based on, you
13   know, sort of a too finely parsed definition of what a
14   copy is.  But, you know, partial installations,
15   installations that were not configured, installations
16   that later were deleted, all of those, we think, are --
17   we can argue about the legal import of those.
18           But from a factual perspective, we just want to
19   know what the total universe is and an explanation of
20   either what the Government has done to determine that
21   factual universe or if there's information that it no
22   longer has, it had at one time but was -- you know, has
23   been lost or destroyed for whatever reason that prevents
24   the Government from answering more fully.  We just think
25   that that is really a key issue here.
```

```
 1              And once we have that, we'll then be well
 2   positioned to move forward with taking depositions,
 3   testing those assertions, comparing them to documents in
 4   the documentary record and -- but we just need to know
 5   what the Government's position, based on a kind
 6   reasonably diligent search and investigation, what that
 7   is.  (Inaudible) in one place in the form of a kind of
 8   proper narrative interrogatory response that's verified.
 9              THE COURT:  I'm inclined to observe that we're
10   in sort of the same dilatory kind of position that we
11   were in back in May and, unfortunately, I don't have the
12   time to explore what it will take to get us past that
13   point.  I have to be in court in ten minutes.
14              Let me sort of short-circuit our conversation
15   today.  I was hoping to hear somewhat more conclusive
16   reports on where you are in discovery.  But what I'd like
17   to do is -- and I'll let Tyler work with you all later on
18   this, but let's schedule a status conference in about
19   three weeks.
20              And in the interim, I'm going to deny without
21   prejudice the motion to quash and I am looking for harder
22   answers, certainly from the Government.  I think the
23   Plaintiff is entitled to know how many installations
24   there were in whatever form that takes in terms of the
25   Government being able to answer it.  I think a year and a
```

```
 1   half or however old this case is is long enough to get an
 2   answer to that question.
 3           If the Government is going to take the position
 4   that it is -- that getting a precise answer is
 5   immaterial, for various legal reasons that I guess Mr.
 6   Gilmore has alluded to, I want to suss that out quickly
 7   and find out whether or not, in fact, the game is worth
 8   the candle here.
 9           So I'll ring off for now and talk to you folks
10   in three weeks and hope that you can have some agreements
11   on both the nondisclosure question and concluding
12   Plaintiff's effort to get harder numbers in terms of
13   copies.
14           Okay, any questions?
15           MR. GILMORE:  No questions, Your Honor.  And to
16   I guess, you know, your point, we are working on other
17   issues and have been working cooperatively with Mr. Todor
18   on other issues such as planning for upcoming
19   depositions, other issues with discovery production.  So
20   we're moving forward on all those fronts.
21           THE COURT:  Good.  Mr. Todor, anything you need
22   to tell me?
23           MR. TODOR:  No, Your Honor.
24           THE COURT:  All right.  Ms. Heischmidt?
25           MS. HEISCHMIDT:  No, Your Honor, thank you.
```

```
 1            THE COURT:  All right, thank you, folks.  We're
 2   adjourned.
 3            MR. TODOR:  Thank you, Your Honor.
 4            MR. GILMORE:  Thank you, Your Honor.
 5            (Whereupon, at 9:19 a.m., the hearing was
 6   adjourned.)
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    CERTIFICATE OF TRANSCRIBER
 2
 3           I, Elizabeth M. Farrell, court-approved
 4    transcriber, certify that the foregoing is a correct
 5    transcript from the official electronic sound recording
 6    of the proceedings in the above-titled matter.
 7
 8
 9
10    DATE: 7/24/2017              S/Elizabeth M. Farrell
11                                 ELIZABETH M. FARRELL, CERT
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```