```
 1            IN THE UNITED STATES COURT OF FEDERAL CLAIMS

 2

 3   4DD HOLDINGS, LLC,                    )

 4            Plaintiff,                   )

 5               vs.                       ) Case No.

 6   THE UNITED STATES OF AMERICA,         ) 15-945C

 7            Defendant,                   )

 8        and                             )

 9   IMMIX TECHNOLOGY, INC.,               )

10            Third Party Defendant.       )

11

12

13

14                     Suite A-805

15            Court of Federal Claims Annex Building

16                 1401 H Street, N.W.

17                  Washington, D.C.

18            Wednesday, September 6, 2017

19                    10:30 a.m.

20            Telephonic Status Conference

21

22        BEFORE:   THE HONORABLE ERIC G. BRUGGINK

23

24

25   Sara J. Vance, CERT, Digital Transcriptionist
```

4DD Holdings, LLC v. USA & Immix Technology                                 9/6/2017

```
 1    APPEARANCES:

 2    ON BEHALF OF THE PLAINTIFF:

 3              ROBERT B. GILMORE, ESQ.

 4              EDWARD H. MEYERS, ESQ.

 5              PAT A. CIPOLLONE, ESQ.

 6              Stein Mitchell, et al.

 7              1100 Connecticut Avenue, NW

 8              Suite 1100

 9              Washington, DC  20036

10              (202) 737-7777

11              (202) 296-8312

12              emeyers@steinmitchell.com

13

14    ON BEHALF OF THE DEFENDANT:

15              JOHN J. TODOR, JR., ESQ.

16              U.S. Department of Justice - Civil Division

17              P.O. Box 480

18              Ben Franklin Station

19              Washington, DC  20044

20              (202) 616-2382

21              (202) 514-8640 (fax)

22              john.todor@usdoj.gov

23

24

25
```

4DD Holdings, LLC v. USA & Immix Technology                                    9/6/2017

```
 1    APPEARANCES (CONT'D)
 2    ON BEHALF OF THE THIRD PARTY DEFENDANT:
 3              SARA M. LORD, ESQ.
 4              Arnall Golden Gregory, LLP
 5              1775 Pennsylvania Avenue, NW
 6              Suite 1000
 7              Washington, DC 20006
 8              (202) 677-4054
 9              (202) 677-4055 (fax)
10              sara.lord@agg.com
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    P R O C E E D I N G S
 2                   -    -    -    -    -
 3              (Proceedings called to order, 10:33 a.m.)
 4              THE COURT:  -- your end?
 5              MR. GILMORE:  Yes, I'm joined by my colleagues,
 6     Ed Meyers and Pat Cipollone.
 7              COUNSEL:  Good morning, Your Honor.
 8              THE COURT:  Good morning.
 9              And Mr. Todor?
10              MR. TODOR:  Good morning, Your Honor.
11              THE COURT:  Good morning.
12              MR. TODOR:  It's just me.
13              THE COURT:  All right.  And for Immix, Ms.
14     Lord?
15              MS. LORD:  Yes, I'm here.  Good morning, Your
16     Honor.
17              THE COURT:  Good morning.  Thank you for
18     joining us.
19              All right.  I think today was just a followup
20     on maybe -- what was it, a status conference, or I can't
21     remember if we're dealing with any motions the last time
22     we got together about a month ago, but there were a lot
23     of activities in play.  And y'all had lots of chores you
24     were working on.  And I assume today's a good day to
25     report back on that.
```

4DD Holdings, LLC v. USA & Immix Technology                                    9/6/2017

1               So you want to begin, Mr. Gilmore?

2               MR. GILMORE:  Thank you, Your Honor.  And, yes,

3    I think initially we thought we would be just reporting

4    on the status, but there's several disputes, one that's

5    time-sensitive, that we think we needed -- really needed

6    to discuss with Your Honor today.  The two issues that I

7    think are pressing, one is the Government's last-minute

8    and unwarranted effort to limit the questioning of Mr.

9    Calvin, who we are scheduled to depose tomorrow.

10              THE COURT:  And who is he?

11              MR. GILMORE:  The second -- I'm sorry?

12              THE COURT:  Who is Mr. Calvin?

13              MR. GILMORE:  David Calvin was the project

14   engineer and the contracting officer's representative.

15   He is a -- I think an important witness, and he is the

16   person who has submitted now three declarations

17   regarding the number of installs and the circumstances of

18   installs of the TETRA software.  We discussed his

19   deposition at the August 9th hearing with Your Honor.

20   Your Honor had ordered at that hearing that the

21   Government supplement its response to address on all of

22   the installs and provide accounts of those installs,

23   including partial installs or unconfigured installs for

24   the TETRA software.

25              THE COURT:  (Inaudible).

1            MR. GILMORE:  We were supposed to take --

2            THE COURT:  Hang on.

3            MR. GILMORE:  Sure.

4            THE COURT:  You're talking about supplementing

5     interrogatories or production or what?

6            MR. GILMORE:  Talking -- supplementing the

7     Government's interrogatory responses in advance of the

8     deposition.  And at that point on August 9th, we were

9     to -- were scheduled to take Mr. Calvin's deposition on

10    August 28th.  Now, what happened --

11           THE COURT:  And has that supplementation taken

12    place?

13           MR. GILMORE:  Well, we received it last Monday.

14    We learned on Thursday -- the Thursday before his Tuesday

15    deposition, that the Government wouldn't have any

16    information from him until the Monday before his Tuesday

17    deposition, nor was the Government able to tell us when

18    they'd be producing additional documents.  And Mr. Todor

19    suggested that we postpone his deposition and postpone

20    the entire case schedule by four months.

21           We said we were not willing to postpone

22    the case schedule by four months.  We did agree to

23    postpone his deposition by one week so that we would

24    receive the information that you had ordered the

25    Government to produce, not the night before his

4DD Holdings, LLC v. USA & Immix Technology                              9/6/2017

1    deposition, but, you know, sufficient time to digest and

2    analyze it.

3              We then said to Mr. Todor, why don't we have an

4    in-person meet-and-confer, since we're not going to be

5    deposing Mr. Calvin on Tuesday, August 28th; let's have

6    an in-person meet-and-confer and just hash through all of

7    these discovery issues and try to get some firm

8    commitments.

9              We met with Mr. Todor on that Tuesday, covered

10   a lot of issues, made progress on some issues, but

11   notably Mr. Todor was not able to commit to when they

12   would even start producing, let alone finish producing

13   the additional documents -- additional custodian

14   documents that we had asked for way back in July, now a

15   month and a half.  Haven't received a single document for

16   any of those people.

17             And then to get to this issue, we then received

18   an email from him the day after that meet-and-confer,

19   where Mr. Todor indicates that the Government would seek

20   to limit the questioning of Mr. Calvin at his deposition

21   unless the Plaintiffs supplement their answers to

22   interrogatories.  This is the first time -- Mr. Todor had

23   not raised that issue at either of the hearings we had in

24   July or August in front of Your Honor or at our in-person

25   meet-and-confer the day before.

4DD Holdings, LLC v. USA & Immix Technology                          9/6/2017

1          THE COURT:  Well, let's -- hang on.  What is it

2     that from your perspective might have triggered a need to

3     supplement your answers?

4          MR. GILMORE:  We don't know.  I mean, and we've

5     answered -- the interrogatory answer that he's seeking

6     supplementation on is the same issue that we've been

7     discussing, which is what is the -- what's the number of

8     TETRA installs that the Plaintiffs are contending.  We

9     answered that almost a year ago in a detailed answer.  We

10    identified what we believe were in excess of 45,000

11    copies and identified documentation that we had found

12    from the production thus far that we believed supported

13    that.

14          And, you know, so we think that we've given,

15    frankly, more information in a more detailed response

16    than the Government has answered on a topic that, of

17    course, you know, the Government should be the ones in

18    possession of that information and should be the ones

19    providing the detailed response.  It's the topic that

20    we've gone to and discussed with -- you know, at

21    multiple conferences with Your Honor, and the

22    Government knows is one of the main reasons why we

23    wanted to take Mr. Calvin's deposition early.  And now

24    the --

25          THE COURT:  All right.  What is the proposed

4DD Holdings, LLC v. USA & Immix Technology                                   9/6/2017

1    limitation on Calvin's subject matter?  Back to Mr.

2    Gilmore.

3              MR. GILMORE:  Well, they -- what Mr. Todor has

4    said is that they would limit us to only questioning

5    about the Government's authorization and consent of SMS

6    installing TETRA software in its SMS lab environment.

7              THE COURT:  Okay.  And why do you want to go

8    beyond that?

9              MR. GILMORE:  Well, Your Honor, we want to take

10   -- we want to be efficient.  We want to take a deposition

11   of Mr. Calvin on all topics that are relevant to this

12   case, and we want to question him about his declarations

13   and the interrogatory responses and documents that bear

14   on those declarations and interrogatory responses that he

15   verified that get to the number of installs of -- or

16   uninstalls, partial installs, of the software everywhere,

17   in the Government's testing centers as well as in the SMS

18   lab.  And other --

19             THE COURT:  Hang on.  Do the declarations go to

20   the question of the number of installs?

21             MR. GILMORE:  They do.  We don't think they --

22   we think they raise more questions than they answer, but

23   that is the topic.  And those declarations and the

24   interrogatory answers were not limited to just the issue

25   of authorization or consent on installs in the SMS lab.

4DD Holdings, LLC v. USA & Immix Technology                                9/6/2017

```
 1              THE COURT:  Okay.  So what's the second
 2   disputed issue?
 3              MR. GILMORE:  The second disputed issue is that
 4   we need a commitment from the Government as to when they
 5   will substantially complete production of documents from
 6   additional custodians and when they will make available
 7   to us data that we've been seeking at least since January
 8   -- the hard drives that contain whatever data was -- is
 9   supposedly still preserved, still in existence from the
10   Richmond Development Testing Center.
11              And we have been pursuing that, and the
12   Government has given us images that we cannot access, and
13   we've gone back to the Government multiple times.  The
14   Government still has not been able to make that data
15   available to us.  I don't know, and I'm not going to
16   speculate as to the reasons why, why, but we're being
17   prejudiced because it's data that is plainly relevant.
18   It's data that we've been seeking for months, and we
19   still don't have access to it.
20              And we don't think that it's -- it's something
21   that we raised at the last hearing on August 9th with
22   Your Honor.  We think it's important because one of the
23   issues that we've discovered is that the Government
24   decommissioned the Data Testing Center in 2015, we think
25   after we had filed this lawsuit, which raises real issues
```

1    of evidence preservation.  They've said that all they've

2    been able to identify as remaining from the Richmond Data

3    Development Testing Center are the contents of these hard

4    drives.  And, you know, we're two years into this case,

5    and we still haven't been able to access and review that

6    information.

7            THE COURT:  Okay.  Other than the two disputed

8    issues, is there anything else that you need to sort of

9    fill in the gaps for me, from the last time we've met?

10           MR. GILMORE:  Well, I mean, I can report KSJ

11   produced documents.  We've gotten deposition dates for

12   some of the additional custodians, although those are the

13   custodians from whom we don't have their -- I'm sorry, we

14   have deposition dates for some of the additional

15   Government witnesses, and we are working on several other

16   third-party document issues that we've made some progress

17   on.  So, yeah, we're moving ahead.

18           I am, you know, though -- Mr. Todor has

19   indicated that he's given us dates for the additional

20   custodians as well, but I think the need to have firm

21   commitments, when the Government is going to produce

22   documents and when it's going to provide the data I think

23   drives what's happening in this case.  And we don't think

24   that we can -- we should be forced to extend the schedule

25   once again.

1      You know, we asked at the meet-and-confer we

2   had with Mr. Todor on -- that they produce the documents

3   for these additional custodians by September 30th.  And

4   Mr. Todor said to us that that was a reasonable date,

5   that was the date that he would ask for if he were us,

6   but he couldn't commit to that date.

7      Well, you know, we suggested that maybe if the

8   Court ordered the Government to produce documents, to

9   make substantial completion of its production by date

10  certain that that might motivate Mr. Todor's clients.

11  And we think that that's what the Court should do at this

12  point.  We don't have any more information from Mr. Todor

13  that they are going to be able to produce documents by

14  September 30th, and so we think that the Government

15  should order the Government to -- that the Court should

16  order the Government to do that.

17      THE COURT:  Remind me, is the production

18  limited to the -- production request and discovery

19  limited strictly to the authorization and consent

20  question?

21      MR. GILMORE:  It's not, and the Government has

22  been producing documents, and we've been exchanging

23  written discovery requests and responses on all the

24  topics related to the case.  So it has not -- discovery

25  has not been bifurcated, and the Government has not been,

1    you know, treating its document production in that

2    manner.

3         And we think that that's appropriate.  I mean,

4    it would be inefficient, frankly, to try and tease out

5    and separate out the -- what might relate on

6    authorization consent from every other issue.  The issues

7    in this case are really -- you know, pretty inextricably

8    intertwined in that regard.

9         THE COURT:  Well, remind me, based on your best

10   recollection, walking through it all over again, but what

11   was it that the Government offered in its motion to

12   dismiss to, in effect, satisfy a burden to demonstrate

13   that there was no authorization and consent?  I'm again

14   asking the Plaintiff.

15        MR. GILMORE:  Your Honor, from our read, the

16   Government seems to very heavily rely on what we think is

17   a self-serving presentation from the contractor, SMS,

18   that SMS gave to the Government while it was in the midst

19   of bidding on the recompete for the contract.  So it had

20   every incentive to tell the Government what the

21   Government wanted to hear.  And --

22        THE COURT:  Well, forgetting the motivation for

23   a minute, what does it amount to?  What -- if SMS's

24   information is credited, what would it amount to?

25        MR. GILMORE:  Well, the presentation from

4DD Holdings, LLC v. USA & Immix Technology                                    9/6/2017

1    January 2015 claims that the Government had not

2    authorized SMS to produce -- to install copies in the SMS

3    lab.  We've found lots of contrary evidence,

4    contemporaneous correspondence predating that

5    presentation, where -- that we believe -- and we intend

6    to question witnesses about -- that show the Government

7    knowing what SMS was doing in the lab, moving the

8    contents of the DTC into the SMS lab because the

9    Government testing center wasn't adequate for the work

10   that needed to occur on the contract.

11           And so the Government telling SMS do the work

12   in your lab, and the Government making available to SMS

13   the TETRA software for use in the SMS lab, I mean, at the

14   same time -- in those same communications indicating that

15   the Government knows that it needs to keep track of how

16   many copies are being made.

17           We actually asked Mr. Todor to consider

18   withdrawing the motion to dismiss because we're sure he's

19   aware of those documents, particularly if he's preparing

20   Mr. Calvin for his deposition.  And we don't think that

21   there's a valid basis for the motion.  And the motion is

22   artificially driving scheduling issues and scheduling

23   problems.  The close of discovery --

24           THE COURT:  Hang on, hang on a second.

25           MR. GILMORE:  Sure.

4DD Holdings, LLC v. USA & Immix Technology                    9/6/2017

1           THE COURT:  That's, frankly, my concern.  I'm
2      wondering if we need to not strictly as an alternative
3      but simultaneously perhaps get your response as best
4      you're able to on the motion to dismiss to decide whether
5      or not we need to get rid of that as an irritant in the
6      discovery process.  I mean, if you're satisfied that
7      you've got enough to preclude dismissal at this point,
8      I'm wondering if that wouldn't be the best thing to do,
9      is to resolve the motion to dismiss and then that way we
10     wouldn't have the distraction of the argument that this
11     doesn't relate to authorization and consent.
12          And at this point, I guess I'll -- well, let
13     me continue with the Plaintiff for a minute.  How long
14     would it take you to put together a response based on
15     what you currently have on the motion to dismiss?  Or
16     does that require pursuing some of the currently ongoing
17     discovery?
18          MR. GILMORE:  So, Your Honor, under the current
19     schedule, our response is due January 3rd to the motion.
20          THE COURT:  Oh, I see.  I'd already given you a
21     due date, I see, okay.  Well --
22          MR. GILMORE:  And the discovery relating to the
23     -- it's called, I guess, jurisdictional discovery,
24     related to that motion, is supposed to be concluded by
25     December 1st.

4DD Holdings, LLC v. USA & Immix Technology                              9/6/2017

```
 1              THE COURT:  I see.
 2              MR. GILMORE:  Plenary discovery closed
 3   August -- I'm sorry, April.  And, so, you know, we
 4   think even with the delays, particularly if Your Honor
 5   spurs the Government by telling them, well, commit to
 6   certain -- a time table for production, commence with a
 7   time table for making the hard drives available, we
 8   think that we can -- we'll certainly, on our end, do
 9   everything we need to make the April discovery deadline,
10   but we're -- you know, we're looking at this schedule
11   for the motion to dismiss, and we just don't -- you
12   know, we don't want to be prejudiced by not having,
13   you know, the depositions of witnesses so that we know,
14   you know, and will present, you know, all the right
15   evidence to Your Honor on why their motion -- if the
16   Government's going to consider pursuing it, on why their
17   motion fails.
18              THE COURT:  Well, I guess what I need to have a
19   better understanding of is to what extent is the ongoing
20   discovery -- has it sort of jumped the traces into
21   generalized discovery relating to liability or damages or
22   whatever.  Are we well beyond authorization and consent
23   in terms of interrogatories and document production?
24              MR. GILMORE:  Yes, Your Honor.  I mean, I think
25   Mr. Todor's got to agree.  We're well beyond that.  We
```

1   haven't limited our production.  The third parties

2   haven't limited the production.  And except for one third

3   party, SMS, no other third party I'm aware of has

4   bifurcated their discovery.

5           And the Government has -- and, frankly, you

6   know, we don't think that SMS should have.  And the

7   Government hasn't bifurcated its discovery, production or

8   documents, or responses to interrogatories.  In fact, the

9   response that the Government, you know, claims we think

10  is without merit, that we need to supplement, doesn't

11  have to do -- it's certainly not limited to authorization

12  and consent.  It has to do with the whole thing.

13          THE COURT:  Okay.  Hang on.

14          MR. GILMORE:  So no one is treating -- sure.

15          THE COURT:  Mr. Gilmore, are you on a speaker

16  phone?

17          MR. GILMORE:  I am, Your Honor.

18          THE COURT:  Okay.

19          MR. GILMORE:  Are you having a hard time

20  hearing me?  I apologize.  I'll try and talk --

21          THE COURT:  No, I'm not having a hard time

22  hearing you.  I'm having a hard time interrupting you, I

23  guess, is the point.

24          MR. GILMORE:  Oh.  I apologize.  I don't mean

25  to -- I'm sorry, I don't mean to talk over you, Your

1    Honor.  I apologize for that.

2              THE COURT:  No, it can't be helped, I guess,

3    with the speaker phone.

4              All right.  Let's shift to the Government for a

5    minute.  Anything you need to address in terms of your

6    assessment of where we are with each other?

7              MR. TODER:  Yes, Your Honor.  And just to

8    clarify a few things Plaintiff's counsel said, with

9    respect to Mr. Calvin's deposition, at our status

10   conference on August 9th, the Court directed us to have

11   Mr. Calvin state to his knowledge the number of

12   nonfunctional or partial installs.  We sent that to

13   Plaintiffs on August 28th.  They have that.  They have

14   the number that Mr. Calvin is aware of.

15             After that, we met with Plaintiff's counsel the

16   next day, where they were talking about the discovery

17   issues they had.  During that conversation, it became

18   clear to me that the real focus of what they were going

19   to be asking Mr. Calvin about was not the authorization

20   and consent issue for jurisdictional discovery for which

21   the deadline is December 1st; it was the number of

22   installs in the DTC environment, which isn't even an

23   issue in the motion to dismiss.

24             And then I looked at their interrogatory

25   responses, especially their supplemental interrogatory

4DD Holdings, LLC v. USA & Immix Technology                              9/6/2017

 1    response from October of 2016, where they said that they
 2    were looking at documents and they intended to supplement
 3    their response with respect to the number of installs,
 4    the very same time topic for which they demanded that Mr.
 5    Calvin provide, you know, now three declarations.  And
 6    they never have supplemented their response.
 7              This would be crucial information for
 8    refreshing the witness' memory, and as the Court has
 9    noted, the December 1st deadline, it's for jurisdictional
10    discovery.  It's not for general discovery.  The only
11    time urgency for Plaintiffs, if they feel they need to
12    take depositions to respond to our motion to dismiss,
13    relates to the authorization and consent issue.  It
14    doesn't relate to these other issues.
15              That's why I sent the letter -- I sent them a
16    letter last Wednesday, the day after we met, saying, you
17    know, please supplement your interrogatory response with
18    what you know in a week, and given that they feel that
19    they're prepared to depose Mr. Calvin on this topic,
20    presumably they've identified the documents they think
21    that bear on the question and they think they have the
22    answers in their mind.  Their mind's been sharpened on
23    the issue, sent out within the week, they refused to do
24    so.
25              I also had previously suggested that as the

4DD Holdings, LLC v. USA & Immix Technology                                    9/6/2017

1    Court has heard, Plaintiffs have raised a number of new

2    document discovery-type issues.  They're asking again for

3    new document custodians, which their first request came

4    in September of 2016, responses completed by May -- by

5    the end of April 2016.  They had that full response --

6    250,000 documents -- in their possession for over three

7    months.

8            Then they come out with new -- another list of

9    custodians, some of which are, you know, one is a very

10   senior official who's no longer with the Government, is

11   on a completely different email system, and now they're

12   coming to the Court saying that they're going to be

13   prejudiced if we don't complete that in two months when

14   the previous production took seven months and there was

15   no motion to compel there.

16           Again, the only time urgency is on the

17   authorization and consent issue.  They are seeking to

18   take basically general discovery depositions of -- in all

19   of these witnesses before they complete their own

20   disclosure.  And that's the other issue that I raised

21   with Plaintiffs that Plaintiffs didn't mention to the

22   Court.  In my letter last Wednesday, I told them and I

23   discussed this with them at the -- our in-person

24   conference last Tuesday, that the Plaintiffs issued a

25   huge number of third-party subpoenas, to different

4DD Holdings, LLC v. USA & Immix Technology                                    9/6/2017

     1     companies.

     2              We have not gotten Plaintiff's production

     3     from all of those.  They sent one round of subpoenas,

     4     I believe, July 2016.  We haven't gotten any production

     5     from one company, T4.  From SMS, the company at issue

     6     in the authorization and consent, we don't have a

     7     record of anything other than the documents that were

     8     actually filed with the Court, even though SMS did make a

     9     limited production on the authorization and consent

    10     issue.

    11              And, furthermore, Plaintiffs sent another round

    12     of approximately ten subpoenas this January.  They didn't

    13     even mention those, asking -- they were just asking

    14     whether we had received the productions.  They didn't

    15     actually state whether they had made the production.

    16     They didn't even mention those other companies as ones we

    17     should even check on, so I don't even know what their

    18     status is on the second round of subpoenas.

    19              Again, in order to have a proper chance to

    20     prepare our witnesses for deposition, the Plaintiffs are

    21     intending on introducing a document from a third-party

    22     subpoena, it should have been produced to us and for us

    23     to have the opportunity to review it beforehand.

    24     Plaintiffs can't even tell us whether they got the

    25     documents or not.

1          All of these, you know, document issues -- both

2    old document issues and new ones Plaintiffs are, you

3    know, trying to relitigate, such as the DTC hard drives,

4    I've been asking Plaintiffs since March in what form they

5    want the Government to produce it.  I never got a

6    response on that, so I just went ahead and produced it on

7    my own in May.  They said they had trouble accessing it

8    because of the encryption.  I went back to the client.  I

9    sent the information that they had.  Plaintiffs said they

10   still couldn't access it.  I went back to them, but,

11   again, we produced it in the way it was kept by the

12   client.

13          Any implication that the Government is engaged

14   in any kind of deliberate delay is completely unfounded.

15   We're trying to produce and meet our responsibilities,

16   and we gave the declaration that the Court instructed to

17   have the witness provide.

18          All of those reasons are why I had suggested to

19   Plaintiffs either we complete all of these discovery

20   issues that they're bringing -- some of which are new,

21   some of which have been lingering -- and then we can

22   move to depositions; or, if they're not going to do

23   that, we limit the questioning on the depositions

24   that are happening between now and December 1st to

25   the authorization and consent issue because that's the

4DD Holdings, LLC v. USA & Immix Technology                                    9/6/2017

1    only issue for which Plaintiffs need to have discovery

2    in order to file their response to our motion to

3    dismiss.  The rest can be done in general discovery

4    after everyone has completed all of their document

5    production.

6              THE COURT:  Okay, a number of issues.  First of

7    all, on the third-party subpoenas, tell me how that

8    process works.  Mr. Gilmore, you send a subpoena to a

9    third party; they furnish information to you.  Does the

10   Government get access to any of that?

11             MR. GILMORE:  Your Honor, our understanding of

12   the process, as it unfolded and as it has unfolded since

13   we've come onto the case, the Government was given an

14   opportunity to review the productions of all of the

15   third-party subpoena documents and assert the level of

16   confidentiality that the Government needed, that it

17   believed that those documents warranted.  And during that

18   interim period, I think the Government had, like, 30

19   days.  During that interim period, we maintained all the

20   documents as attorneys' eyes only.

21             So it was our understanding that the Government

22   was at the same time, you know, we were seeing was

23   reviewing all of these productions.  So were taken aback

24   by Mr. Todor's assertion that he doesn't have copies of

25   the documents that the third parties produced.  But when

4DD Holdings, LLC v. USA & Immix Technology                    9/6/2017

1    he raised that again for the --

2              THE COURT:  So -- hang on, hang on.

3              MR. GILMORE:  Sure.

4              THE COURT:  What was the -- what was the

5    instructions to the third party in the subpoena?  Were

6    they supposed to make copies and give one set to the

7    Government and one set to the Plaintiff?  Or did

8    everything get funneled through the Government, or did

9    everything get funneled through the Plaintiff?  I'm

10   asking Plaintiff.

11             MR. GILMORE:  Well, Your Honor, I'm sorry, I'm

12   not sure that I can answer that exactly the process --

13   what we were informed by prior counsel was that the

14   productions were made available to the Government and the

15   Government asserted confidentiality designations and

16   we've seen that happening.  The precise mechanics I'm not

17   aware of.  Since we've come onto the case, the

18   productions that we've received from third parties,

19   we've, I think, is one, right, the KSJ documents we've

20   made available, the same -- at the same time that we

21   received it from KSJ.  So

22             THE COURT:  Is there any current third-party

23   production request outstanding?

24             MR. GILMORE:  There are, and we identified in

25   the correspondence that we sent to Mr. Todor last week

4DD Holdings, LLC v. USA & Immix Technology                    9/6/2017

     1    the entities from whom we've received document

     2    production.  We're still in the process of pursuing

     3    several others who have yet to produce or we're still

     4    working through the parameters of their production.

     5              But this is -- again, this is not something

     6    that we had heard from Mr. Todor before --

     7              (Whereupon, at 11:03 a.m., the audio file ends

     8    abruptly.)

     9

    10

    11

    12

    13

    14

    15

    16

    17

    18

    19

    20

    21

    22

    23

    24

    25

4DD Holdings, LLC v. USA & Immix Technology                                    9/6/2017

```
 1                    CERTIFICATE OF TRANSCRIBER

 2

 3          I, Sara J. Vance, court-approved transcriber,

 4    certify that the foregoing is a correct transcript from

 5    the official electronic sound recording of the

 6    proceedings in the above-titled matter.

 7

 8

 9

10    DATE:  9/14/2017              s/Sara J. Vance

11                                  SARA J. VANCE, CERT

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```