IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| 4DD HOLDINGS, LLC, and<br>T4 DATA GROUP, LLC,<br><br>      *Plaintiffs*,<br>  v.<br><br>THE UNITED STATES OF AMERICA,<br><br>      *Defendant*,<br><br>  and<br><br>IMMIX TECHNOLOGY, INC.,<br><br>      *Third-Party Defendant*. | Case No. 15-945C<br><br>Senior Judge Eric G. Bruggink |

**JOINT STATUS REPORT**

Pursuant to the Court's September 11, 2017 Order [Dkt. No. 83], the Parties submit this Joint Status Report regarding current discovery issues. The Parties met and conferred telephonically on September 29, 2017 and October 2, 2017 regarding the issues addressed below.

1. **The Government's Preservation and Production of Files from Government Furnished Computers**

**Plaintiffs' Statement:** In response to third-party discovery, a number of contractors have indicated that they have already returned to the government computers that were used on the project. For example, documents produced by third parties show that a contractor with KSJ & Assocs. – Denise Stokely – responded to a government litigation hold in this case by stating that she had an email file containing a significant amount of email about the installation and uninstallation of Plaintiffs' software in the Richmond facility. When Plaintiffs asked KSJ whether it had searched her laptop or email, KSJ's counsel stated that Ms. Stokely no longer worked for

1

KSJ and the laptop she referenced in her email had been returned to the government in November 2016. KSJ's counsel also informed Plaintiffs that the email Ms. Stokely used for the project was issued by the government and KSJ had no access to it.

Plaintiffs thereafter asked the government to produce the relevant emails from Ms. Stokely's account and files from her laptop. On Thursday, September 28, 2017, the government finally informed Plaintiffs that it failed to preserve the contents of either of Ms. Stokely's returned government laptops, despite knowing of their contents and receiving both back well after Plaintiffs filed this suit. The government informed Plaintiffs that Ms. Stokely had been issued two government laptops. The first laptop she was issued was returned to the government in February 2016 and the government then "reimaged" the laptop (wiped the existing content of the computer and installed a new operating system and software). The government informed Plaintiffs that, apparently, the government did not preserve data from Ms. Stokely's laptop before the government reimaged the computer. According to the government, the second laptop was issued in "late February 2016" and returned when Ms. Stokely left the project November 14, 2016. That laptop was reimaged on *August 28, 2017* – four days after KSJ informed Plaintiffs that Mr. Stokely's laptop had gone back to the government – and none of Ms. Stokely's information was preserved.

When asked, counsel for the government was unable to give assurances that proper evidence preservation measures at a minimum have been implemented going forward.

This issue only compounds potential evidence preservation and spoliation issues Plaintiffs already have identified. As discussed with the Court at the August 9, 2017 status conference, Plaintiffs have learned through discovery that in 2014, the Government embarked on an effort to delete copies of TETRA from the Richmond DTC—issuing change orders to this effect *after* 4DD had raised with the government the issue of overinstalling unlicensed copies of TETRA.

Furthermore, the government claims that it "decommissioned" the Richmond DTC in the summer of 2015, but information Plaintiffs have learned from third parties suggests that this decommissioning was completed not in the summer, but in October 2015, *after* Plaintiffs had filed this suit.

Plaintiffs are investigating the government's failure to preserve known relevant evidence and to implement appropriate preservation measures, and intend to take a 30(b)(6) deposition of the government's document preservation and collection efforts in connection with this case. Plaintiffs may need to seek relief from the Court based on the results of their investigation.[1]

**Government Statement**:

With respect to the issue of the KSJ laptops, after plaintiffs raised this issue with us on September 14, we investigated the issue with the agency. We responded in paragraph 1 of the attached email. *See* Email from Todor to Gilmore, Sept. 28, 2017 (attached as Exhibit A), ¶ 4. It is our understanding that upon filing of the lawsuit, Government officials informed KSJ of the lawsuit and of the litigation hold in place to remind KSJ of its preservation obligations. However, based on the results of our investigation thus far, it is our understanding that the Government did not affirmatively collect documents from KSJ or other contractors or subcontractors other than those that were already stored on the Government's email system and document archives.

We have also investigated, but have not yet determined, whether there was a written policy in place with respect to preservation of documents from laptops issued to contractors. Our understanding at this time was that there was no written policy. We are also investigating, but

---

[1] "Aside perhaps from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence." United Med. Supply Co. v. United States, 77 Fed. Cl. 257, 258 (2007). ". . .[C]ourts have held that, like any other litigant, the United States is subject to spoliation sanctions either under the court's inherent authority or the sanction provisions of Rule 37 . . ." Id.

have not yet determined, whether any documents, including emails, were retrieved from those laptops upon their return to the Government from the contractors.  Our understanding is that there was no archive copy kept of the contents of a laptop upon its return from a contractor, but that emails from the contractor employee that were made on the Government email system may have been retained on the Government email system.  As counsel for the Government discussed with counsel for plaintiffs on October 2, 2017, the Government is willing to perform a search on the Government email system to determine whether there are any emails from Ms. Stokely on that system, and is willing to discuss doing the same for a reasonable number of additional custodians.

With respect to plaintiffs' request for a 30(b)(6) deposition regarding the Government's document retention policies, we discussed this matter with counsel for plaintiffs on October 2, 2017, and agreed that any 30(b)(6) deposition addressing document retention policies would not preclude plaintiffs from conducting a later 30(b)(6) deposition on the merits of the case. Nevertheless, pursuant to the Court's order of September 11, 2017, it is our understanding that the Court ordered that depositions not proceed until document production is completed.  *See* Order, at ¶ 1, Sept. 11, 2017, ECF No. 83.  If the Court wishes for the parties to proceed with such a deposition prior to the completion of document discovery, we will do so.

**2. Email Custodians to be Produced by October 13, 2017**

**Plaintiffs' Statement:**  Following the last status conference, the Court ordered the government to produce the non-privileged, relevant emails from Stacy Cummings, Frank Kendall, Chris Miller, Craig Schaefer, and Charles Truesdale on a rolling basis to be completed by October 13, 2017. Dkt. No. 83, ¶ 2.  On September 29, 2017, the government informed Plaintiffs that it was still loading data from the email searches and that there is approximately 70 GB of compressed data that resulted from Plaintiffs' search terms.  The government has stated that this volume of

data cannot be reviewed and produced by October 13, 2017. Based on the government's statements as of Friday, September 29, 2017, (1) the government has not begun reviewing any of the documents for these additional custodians, (2) it is not clear whether rolling productions will even begin before October 13, 2017, and (3) despite the Court's order, the government will not have completed production from these custodians by October 13, 2017. The government asked that Plaintiffs narrow their search terms given to the government, but the government has yet to provide the data or information that would allow Plaintiffs to evaluate that request (e.g., search hit count, proposed alterations to terms, etc.).

While Plaintiffs are willing to consider reasonable modifications of the existing document search effort, it is Plaintiffs' position that the government should, and remains obligated to, produce documents from these custodians by the October 13, 2017 deadline that this Court ordered.

**Government Statement**:

In our email of September 28, 2017, we provided plaintiffs with the information we possess regarding the volume of data received from plaintiffs' second set of email searches. *See* Email from Todor to Gilmore, Sept. 28, 2017, ¶ 6. Because of the large volume of emails received in response to plaintiffs' search terms, estimated at over 850,000 pages for one of the two additional email archives received, with possibly an equivalent amount to follow, we cannot complete the review and production of these emails by October 13. Neither the parties nor the Court were aware of this volume of emails at the time the Court set the October 13 deadline. The Government also was not aware of the volume of emails until it received responses to its email requests last week. We have begun reviewing the documents we have received, but such review cannot be completed by October 13.

It is our understanding that many of these emails will not be responsive to the case but were included in the responses the Government received to plaintiffs' email requests due to plaintiffs' approximately thirty search terms, including common terms such as "core" and "port." Therefore, we respectfully request an extension of the October 13 deadline until December 1, 2017, to enable the Government to load all responsive documents, negotiate a revised set of search terms with plaintiffs to determine a more reasonable set of documents for review, review, and produce these additional emails.

### 3. Access to Encrypted Hard Drives

**Plaintiffs' Statement:** As we discussed with the Court during the September 6, 2017 status conference, the Government has located and produced a set of hard drives from the Richmond Development Testing Center ("DTC") that is a primary focus of this litigation. According to the government, these drives were created to move software from the Richmond DTC to another facility in West Virginia. The drives, however, are encrypted and Plaintiffs have not been able to access large portions of the data stored on them. This prompted the Court to order the United States to "direct the appropriate employee or request the appropriate contractor to appear in person at Plaintiffs' consultant's office to assist Plaintiffs in accessing the hard drives produced by the United States." Dkt. No. 83, ¶ 3.

However, despite the Court's order, as of the date of this Joint Status Report, Plaintiffs still have not been able to access these devices. The government has not made available an employee to appear in person at Plaintiffs' consultant's office to aid Plaintiffs in accessing the hard drives. The government apparently has requested one contractor, MicroHealth, involved in maintaining the hard drives, to aid Plaintiffs. On Thursday, September 28, 2017, the government for the first time informed Plaintiffs that (1) MicroHealth has declined to take any action absent a contract

modification, but that (2) another contractor, ICS Nett, was responsible for creating and encrypting the hard drives in the first instance. On that same day, the parties then reached out to ICS Nett to obtain that company's aid in accessing the devices. That request is pending. In the meantime, Plaintiffs asked the government to confirm that its own employees are unable to access the devices.

**Government Statement**:

We informed plaintiffs of the status of the access to the hard drives in our email of September 28, 2017, and advised plaintiffs of the possibility of contacting ICS Nett in our meet-and-confer teleconference of September 29, 2017. *See* Sept. 28, 2017 Email from Todor to Gilmore, ¶ 1. We have sent plaintiffs the password information and instructions that we received from MicroHealth, the subcontractor that had been assigned to access the hard drives previously. We were told, however, that MicroHealth did not create the hard drives, that ICS Nett created the hard drives in response to a Government request, and that ICS Nett encrypted the hard drives. We were also told that MicroHealth used the password information and instructions given to it by ICS Nett to access the drives. We are following up with ICS Nett and with Microhealth and its prime contractor, American Systems, to determine which contractor may be able to access the drives.

In response to plaintiffs' request that the Government certify that no Government employee has been able to access the devices, we are not aware of any Government employee having been able to access the devices. On September 29, 2017, following up on plaintiffs' request, we asked the IT contractors we retained for purposes of this litigation to attempt to access the drives using the password information and instructions we received from MicroHealth. That request is still pending.

4. **Search for Plaintiffs' Software at the Allegheny Ballistics Lab**

**Plaintiffs' Statement:** On Friday, September 29, 2017, the government informed Plaintiffs' counsel that the hard drives discussed in Issue No. 3 above were created to transfer software from the Richmond Development Testing Center (to the Allegheny Ballistics Lab ("ABL") in Rocket Center, West Virginia. When asked, the government stated that it has not searched the ABL for any instances of Plaintiffs' software. Given that the government moved software and development of new software from the Richmond DTC to the ABL, it is incumbent on the government to search to see whether Plaintiffs' software was moved there as well. Plaintiffs have asked the government to conduct such a search; the government's response is pending.

**Government Statement**:

Plaintiffs first requested that the Government "search to see whether Plaintiffs' software was moved" to ABL in the meet-and-confer conference of September 29. We are investigating to see whether such a search is technically feasible, and, if so, what the search would entail. We have been told that there is no basis to believe that TETRA software would have been installed at ABL because the DTC hard drives were meant to be used to transfer server operations software and certain residual applications to the ABL. The hard drives, however, were not meant to be used to transfer the TETRA software to ABL. We were also informed that all copies of the TETRA software would have been removed from the DTC servers several months before backing up the DTC servers on the hard drives, which occurred at or near the decommissioning of the DTC servers.

5. **ICS Nett Laptops**

**Plaintiffs' Statement:** The parties have been coordinating with ICS Nett regarding the collection of data from 12 government-furnished laptops that ICS Nett used on the relevant

projects and is still using for government work. As we have discussed with the Court previously, ICS Nett cannot copy any of the information off these laptops, and, therefore, the government must intervene to allow any relevant documents to be collected for production. ICS Nett has also informed the parties that it cannot search these laptops because there is no software installed on them that would allow such a search. Therefore, it appears necessary to have the government image the laptops so that the image can be reviewed and relevant documents produced. In light of ICS Nett's representation that it cannot run searches on the laptops, Plaintiffs have asked the government to image the systems and produce the documents that hit on Plaintiffs' search terms. Plaintiffs submit that these materials are in the government's possession, custody, or control. These laptops are government-furnished equipment, used by ICS Nett in performing work under government contracts; only the government can image and search these computers; and ICS Nett has indicated not only its willingness, but its desire, for the government to receive the contents of these laptops and produce responsive documents. Therefore, for the reasons set forth in Plaintiffs' pending motion to compel (Dkt. No. 86), the government should itself obtain and produce the relevant materials from the government-furnished ICS Nett laptops.

**Government Statement**:

As previously discussed with the Court at the August 9, 2017 status conference, it is the Government's position that ICS Nett, as the party that received the subpoena from plaintiffs, has the responsibility to identify responsive documents and make appropriate confidentiality designations prior to production, and the Court ruled that ICS Nett would have this responsibility. *See* Transcript, Aug. 9, 2017, at 49. Plaintiffs' proposed procedure requiring the Government to produce portions of the images that are responsive to plaintiffs' search strings does not comply with the Court's order.

It is also our understanding that the general counsel of ICS Nett's parent company informed plaintiffs that they had already produced "everything that was related to TETRA and all of those documents were turned over" to plaintiffs. *See* Email from Todor to Gilmore, Sept. 28, 2017, ¶ 5. Therefore, imaging of the laptops by the Government appears to be unnecessary at this time. Plaintiffs have requested a conference with ICS Nett to discuss this issue. If ICS Nett represents that there are additional responsive documents that it has not already produced, we will work with plaintiffs and ICS Nett to image the responsive portions of the drives for ICS Nett to review for responsiveness and confidentiality designations prior to production to plaintiffs.

6. **Additional Email Custodians**

**Plaintiffs' Statement:** When the parties negotiated the current ESI Protocol, the parties agreed to start with 10 custodians each, but that there could be more as needed. As prior counsel for the government stated during the hearing to address how discovery would proceed: "we're perfectly amenable to adding more custodians, and I think this is something that could be done between the parties without having to set ground rules in an order, Your Honor." [Dkt. 53] Transcript of October 24, 2016 hearing.

Plaintiffs have identified the need for additional custodians who fall into two distinct groups.

First, there are additional government employees whose role on the project and likelihood of having relevant records has become apparent as we have reviewed the government's and third-parties' documents that have been produced thus far in this litigation.

Second, a number of third-party contractors used government email addresses to conduct their work on the relevant projects. These documents are clearly in the possession, custody, and

control of the government, and are inaccessible to Plaintiffs through third-party discovery because the government controls these accounts.

Plaintiffs have identified additional requested custodians for the government, and will seek to agree with the government on the timetable for production of their emails. Plaintiffs will promptly notify the Court if we reach an impasse and need the Court's intervention.

**Government Statement**:

We are willing to discuss production of documents from a reasonable number of additional custodians in response to plaintiffs' requests. We have not received a list of proposed custodians from plaintiffs or a set of proposed search terms.

7. **Attorneys' Eyes Only Designations**

**Plaintiffs' Statement:** Plaintiffs' review of the documents has been hampered by the government's designation of documents as Attorneys' Eyes Only that do not appear to have any basis for such a designation (*e.g.* emails where all the substance is to or from Plaintiffs, correspondence with congressional offices, internal correspondence among government employees that lacks any competitively-sensitive information). The government has marked as Attorneys' Eyes Only more than 13,000 documents. Rather than go through challenging or redacting so many documents, Plaintiffs proposed allowing one employee to be bound by Exhibit A to the protective order and access all the materials in this case. The government has rejected the person that Plaintiffs proposed, but based on our meet and confer the government agreed to reconsider the issue, given that 4DD is a small company and thus there is no sensible alternative other than the person Plaintiffs have proposed. In the event the parties cannot agree on allowing an employee of Plaintiffs to access the materials, we anticipate that there will be numerous

documents that will need redactions or re-designations, and will notify the Court if we reach an impasse that requires the Court's resolution.

**Government Statement**:

We are considering plaintiffs' proposal. We also note that, in the event the parties do not agree on a procedure for resolving this issue by designating a plaintiff employee who is permitted to review these documents, the Court's January 30, 2017 protective order provides for a procedure to resolve issues with individual documents by conference of counsel.

8. **Problems with the Government's Production of ESI**

**Plaintiffs' Statement:** Plaintiffs continue to identify problems with a variety of aspects of the government's production of electronically stored information (ESI) that are interfering with Plaintiffs' ability to analyze the government's documents. Plaintiffs will be providing the government with a report that details these issues, and will promptly notify the Court if we need the Court's intervention on this topic.

**Government Statement**:

We have asked plaintiffs to identify specific problems with ESI if they encounter them, *e.g.*, we recently provided a supplemented version of our production logs with updated metadata. Plaintiffs did not raise such issues in the parties' September 29, 2017, meet-and-confer teleconference, but we remain willing to discuss any perceived issues with plaintiffs.

    Respectfully submitted,

    */s/ Edward H. Meyers*
    Edward H. Meyers
      *Counsel of Record*
    Pat A. Cipollone, P.C.
    Robert B. Gilmore
    Phillip J. O'Beirne
    **STEIN MITCHELL CIPOLLONE BEATO & MISSNER LLP**
    1100 Connecticut Avenue, NW Suite 1100

                                            Washington, D.C. 20036
                                            Telephone: (202) 737-7777
                                            Facsimile: (202) 296-8312
                                            Email: emeyers@steinmitchell.com

Dated: October 2, 2017

                                            CHAD A. READLER
                                            Acting Assistant Attorney General

                                            ROBERT E. KIRSCHMAN, JR.
                                            Director


                                            /s/ Elizabeth M. Hosford
                                            ELIZABETH M. HOSFORD
                                            Assistant Director


                                            /s/ John J. Todor
                                            JOHN J. TODOR
                                            Senior Trial Counsel
                                            Commercial Litigation Branch
                                            U.S. Department of Justice
                                            Civil Division
                                            P.O. Box 480
                                            Ben Franklin Station
                                            Washington, D.C. 20044
                                            Tel: (202) 616-2382
                                            Fax: (202) 514-8640
                                            Email: john.todor@usdoj.gov

October 2, 2017                                   Attorneys for Defendant

## CERTIFICATE OF SERVICE

I certify that on October 2, 2017, a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the ECF system.

*/s/ Edward H. Meyers*
