## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| 4DD HOLDINGS, LLC, and | ) | |
| T4 DATA GROUP, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 15-945C |
| v. | ) | |
| | ) | Judge Eric G. Bruggink |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| IMMIX TECHNOLOGY, INC. | ) | |
| | ) | |
| Third-Party. | ) | |

## NON-PARTY SYSTEMS MADE SIMPLE, INC.'S SECOND MOTION FOR PROTECTIVE ORDER AND MOTION FOR SANCTIONS

# <u>TABLE OF CONTENTS</u>

Pages

BACKGROUND ................................................................................................................. 3

    I.      PLAINTIFFS HAVE HARASSED SMS FOR IRRELEVANT
           DOCUMENTS FOR OVER TWO YEARS ............................................................. 3

    II.     PLAINTIFFS HAVE MADE NO APPARENT ATTEMPT TO ADDRESS
           THE KEY ISSUES IN THIS CASE ...................................................................... 8

    III.    SMS OFFERED TO ACCEPT A SECOND SUBPOENA FROM
           PLAINTIFFS, BUT PLAINTIFFS HAVE IGNORED SMS'S OFFER .............. 12

ARGUMENT ..................................................................................................................... 14

    I.      SMS HAS FULFILLED ITS DUTY TO PRODUCE ALL DOCUMENTS IN
           ITS POSSESSION, CUSTODY, OR CONTROL RELATING TO
           AUTHORIZATION AND CONSENT .................................................................. 14

    II.     SMS HAS OFFERED TO ACCEPT A NEW SUBPOENA WITHOUT THE
           AUTHORIZATION AND CONSENT LIMITATION, BUT PLAINTIFFS
           HAVE NOT ACCEPTED THE OFFER ............................................................... 18

    III.    BY THEIR OWN ADMISSION, PLAINTIFFS CAN AND SHOULD GET
           WHATEVER DOCUMENTS THEY NEED FROM THE GOVERNMENT ..... 20

    IV.    PLAINTIFFS ALREADY HAVE MANY OF THE DOCUMENTS THEY
           ARE ASKING SMS TO PRODUCE .................................................................. 21

    V.      PLAINTIFFS SEEK IRRELEVANT DOCUMENTS ........................................ 21

    VI.    PLAINTIFFS HAVE UNDULY DELAYED IN FILING THEIR MOTION ..... 24

    VII.   PLAINTIFFS' GAMESMANSHIP IN CONDUCTING DISCOVERY
           AGAINST SMS AMOUNTS TO HARASSMENT, AND THE COURT
           SHOULD IMPOSE SANCTIONS UPON PLAINTIFFS ACCORDINGLY ...... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A-1 Cigarette Vending, Inc. v. United States*,
    49 Fed. Cl. 345 (2001) ..........................................................................................15

*Alexander v. FBI*,
    192 F.R.D. 37 (D.D.C. 2000)................................................................................18

*erinMedia, LLC v. Nielsen Media Research, Inc.*,
    No. 8:05-CV-1123-T-24EAJ, 2007 U.S. Dist. LEXIS 51342 (M.D. Fla. July 3,
    2007) ......................................................................................................................18

*Harris v. Koenig*,
    271 F.R.D. 356 (D.D.C. 2010)..............................................................................15

*In re Sulfuric Acid Antitrust Litig.*,
    231 F.R.D. 331 (N.D. Ill. 2005).............................................................................25

*Martin v. Fort Wayne Police Dept.*,
    2012 WL 5878874 (N.D. Ind. Nov. 21, 2012).......................................................15

*Packman v. Chi. Tribune Co.*,
    267 F.3d 628 (7th Cir. 2001) .................................................................................25

*Susko v. City of Weirton*,
    No. 5:09-CV-1, 2011 U.S. Dist. LEXIS 3134 (N.D.W.Va. Jan. 12, 2011) ............15

*Trilegiant Corp. v. Sitel Corp.*,
    275 F.R.D. 428 (S.D.N.Y. 2011) ..........................................................................15

**RULES**

Rule 11(b) ........................................................................................................................17

Rule 26 .......................................................................................................................20, 21

Rule 30(b)(6)..................................................................................................................2, 11

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| 4DD HOLDINGS, LLC, and | ) | |
| T4 DATA GROUP, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 15-945C |
| v. | ) | |
| | ) | Judge Eric G. Bruggink |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| IMMIX TECHNOLOGY, INC. | ) | |
| | ) | |
| Third-Party. | ) | |

## NON-PARTY SYSTEMS MADE SIMPLE, INC.'S SECOND MOTION FOR PROTECTIVE ORDER AND MOTION FOR SANCTIONS

Non-party Systems Made Simple, Inc. ("SMS"), by and through undersigned counsel, respectfully requests the Court to issue a second protective order to protect SMS from Plaintiffs' continued harassment of SMS and for sanctions. This Court has ruled consistently that SMS has completely fulfilled its discovery obligations with respect to Plaintiffs' June 8, 2016 subpoena (the "Subpoena"). Yet, Plaintiffs continue to subject SMS to repeated, costly demands for documents far beyond that to which the parties agreed and the Court has ordered, at each turn choosing to needlessly involve the Court rather than follow the Rules and work with SMS's counsel, who have cooperated throughout this process. Therefore, SMS respectfully requests the Court to issue an Order providing that no further discovery be had from SMS in response to Plaintiff's Subpoena and for sanctions against Plaintiffs 4DD Holdings, LLC and T4 Data Group LLC.

SMS has done everything in its power to avoid filing this motion.  SMS cooperated with Plaintiffs to understand and narrow the overly broad requests in the Subpoena, as subsequently narrowed by the Court and the parties' agreement to focus on "authorization and consent."  SMS engaged in a costly document search, including search terms Plaintiffs had not requested, such as "authorization" and "consent."  In February 2017, SMS produce documents in excess of what Plaintiffs and SMS had agreed to and what this Court ordered – thus satisfying the Subpoena completely.  SMS also produced four current and former employees for deposition, including a corporate representative pursuant to Rule 30(b)(6).  SMS has searched its documents again and again for additional documents on the subjects of authorization and consent and installations in its possession, and as a result, it has produced additional documents of questionable relevance.  To assuage Plaintiffs' unrelenting complaints about its document production, SMS even went so far as to suggest that Plaintiffs issue it another subpoena clarifying their new document requests, and SMS agreed to accept email service thereof – despite the existence of a Protective Order shielding it from further discovery from Plaintiffs.  Indeed, when SMS received Plaintiffs' "Request for Discovery Conference" and observed that Plaintiffs sought the very relief SMS had offered weeks before, SMS contacted Plaintiffs and again suggested that they issue a new subpoena to avoid the delay and expense of motions practice, but Plaintiffs rejected SMS's offer, choosing again to involve the Court.

SMS's good-faith cooperation has only emboldened Plaintiffs to issue increasingly burdensome requests for irrelevant documents.  Rather than accepting SMS's offer and issuing a new subpoena or otherwise working with SMS in good faith, Plaintiffs have chosen to file yet another costly, baseless motion to this Court.  Although captioned as a Request for Discovery

Conference, it operates as yet another Motion to Compel, making this the *fourth* time Plaintiffs

have hauled SMS into Court to demand documents beyond those to which they are entitled.

This conduct cannot continue.  SMS respectfully requests the Court to issue a protective

order barring any further discovery against SMS, and SMS respectfully requests the Court to

issue sanctions against SMS for the costs, including attorneys' fees, of addressing Plaintiffs'

latest unfounded Request for Discovery Conference ("Motion").

**BACKGROUND**

**I.    PLAINTIFFS HAVE HARASSED SMS FOR IRRELEVANT DOCUMENTS FOR
       OVER TWO YEARS**

Over three years ago, Plaintiff filed its Complaint against the Government.  Complaint,

filed August 28, 2015 (Dkt. #1).  As amended, the Complaint alleges that the Government

directly or indirectly violated Plaintiffs' copyright in its TETRA software.  Am. Compl. ¶ 1 (Dkt.

#21).  The Complaint does not accuse SMS of wrongdoing, nor does it articulate any theory of

SMS's involvement in the Government's alleged copyright infringement in the Government's

environment (over which SMS has no control).

Approximately a year later, on or about June 8, 2016, Plaintiffs issued its Subpoena  to

SMS.  The Subpoena requested documents unrelated to the alleged copyright infringement, such

as SMS's internal business development operations, its marketing efforts, all its software

"licenses" other than TETRA, and other confidential business information.  The Subpoena also

lacked any limitations as to the contract for which information was sought or time.  *See generally*

SMS Opp. To Pl. Second Mot. to Compel (Dkt #71) at 4.  The Court later described the

Subpoena as "incredibly open-ended."  Feb. 13 Tr. at 45 (statement by Court).

On July 25, 2016, the United States Government and Plaintiffs filed a Joint Status Report

and proposed Discovery Scheduling Plan.  In their proposed plan, Plaintiffs and the Government

3

"propose[d] completing *targeted* discovery, *which will be limited to the issue of whether SMS and/or any other contractor of the Government received the Government's authorization and consent to make copies of Plaintiffs' TETRA software.*" Joint Status Report, filed July 25, 2016 (Dkt. 40) at 2 (emphases added).  On July 26, 2016, the Court adopted the parties' proposed discovery plan, including the authorization and consent limitation.  Order filed July 26, 2016 (Dkt. # 41).  *See also* Dkt. #41 (regarding limitation of discovery to "authorization and consent").  Thus, the parties and the Court agreed that discovery should and would be "limited" to the aforementioned "authorization and consent" issue.

SMS promptly engaged in negotiations with Plaintiffs' first counsel to limit the Subpoena's "incredibly open ended" scope.  *See generally* SMS's Opp. to Pl. Second Mot. to Compel at 5 (Dkt #71).  These negotiations lasted months and ultimately resulted in an agreement between Plaintiffs and SMS that SMS need only produce documents relating to the authorization and consent issue.  *See generally* SMS Opp. to Pl. First Mot. to Compel at 3 (Dkt #56).  Plaintiffs and SMS also agreed on the language for a protective order that would prohibit Plaintiffs from using SMS's documents to mount a subsequent litigation against SMS.  *See generally id.* at 3.  Pending execution of the agreed-upon protective order, SMS prepared to produce its documents, as agreed, by November 4, 2016.  SMS Opp. to Second Mot. to Compel at 8; October 21, 2016 email from S. Griffin to W. Jackson (attached as Exhibit A).

However, instead of executing the agreed-upon protective order, Plaintiffs waited two months – until January 6, 2017 – then filed a motion to compel on the ground that they "want[ed] to be able to use the documents [obtained through the Subpoena] in . . . subsequent litigation against [SMS]."  *See generally* Dkt #71 Ex. 6; Pl. Mot. to Compel Discovery, filed January 6, 2017, at 4-5 (Dkt. #55).  After briefing and subsequent guidance from the Court, Plaintiffs

4

relented and accepted the protective order to which they had originally agreed on January 17, and the Court denied Plaintiffs' motion to compel as moot. Dkt. ## 57-61.  SMS produced its documents, as agreed, on February 3, 2017.  *See* SMS Response to Second Mot. to Compel, filed April 20, 2017 at 9 (Dkt. # 71).

Two months later, Plaintiffs filed a second motion to compel against SMS.[1]  Pl. Second Mot. to Compel, filed April 5, 2017 (Dkt. #68).  Plaintiffs' second motion rested on a baseless claim that SMS had not produced all of its relevant documents and demanded the production of volumes of documents unrelated to this litigation, including information relating to every government contract SMS has ever had, every software program it has ever licensed, and all of SMS's business development marketing efforts.  *See generally* SMS Response to Second Mot. to Compel, filed April 20, 2017 at 5 (Dkt. # 71).  SMS opposed the motion on the ground that it had produced all relevant, responsive, non-privileged documents to Plaintiffs in accordance with its agreement with Plaintiffs.  The Court agreed with SMS and denied Plaintiffs motion, holding:

> I'm going to deny the motion to compel because I don't have any solid reason to think that SMS hasn't complied.

May 4, 2017 Tr. at 51 (statement by Court).

On October 10, 2017, the Court removed the authorization and consent limitation on discovery in this case.  *See* October 10, 2017 Order at 2 (Dkt. #92).  Plaintiffs did not take this opportunity to issue a new subpoena to SMS, nor did Plaintiffs attempt to negotiate any additional document productions from SMS.

---

[1] Plaintiffs never explained why it took them two months to review a production that it now decries as "a smattering of documents."  Mot. at 1.

Soon thereafter, in the spirit of good-faith cooperation, SMS took the initiative and asked Plaintiffs to specify relevant documents that Plaintiffs contended SMS's initial review might have missed.  SMS sought Plaintiffs' assistance to "spot check" its searches to ensure it had produced all documents on the authorization and consent issue or understand why it might not have such documents.  November 14, 2017 email from S. Griffin to R. Gilmore (attached as Exhibit B).  Plaintiffs refused to provide the requested assistance.[2]

Instead, Plaintiffs responded by demanding that (1) SMS produce every document relating to the DMiX project, regardless of relevance to the litigation, and (2) SMS perform a second search and produce unspecified "additional documents" beyond those relating to the DMiX project.  November 15, 2017 email from R. Gilmore to S. Griffin (attached as Exhibit B). When SMS refused, Plaintiffs filed a third discovery motion against SMS.  Joint Motion for Status Conference, filed December 12, 2017 (Dkt. #96).  SMS moved for a protective order (Dkt. # 98), and the Court held a hearing on January 5.

During the hearing, the Court immediately focused on the central issue of unauthorized TETRA installations.  Jan. 5 Tr. at 5.  Specifically, the Court inquired as to Plaintiffs' efforts to determine the number of unauthorized TETRA installations had occurred.  *Id.* at 7-8.  Later in the hearing, with the Court still focused on the issue of TETRA installations, the following colloquy ensued:

---

[2] Not only did Plaintiffs refuse to help SMS identify the types of documents they were seeking, but they have refused even to provide SMS with the deposit material for any copyright registration they alleged has been infringed.  June 22, 2018 email from S. Griffin to R. Gilmore and E. Meyers (attached as Exhibit I).  In fact, the Amended Complaint does not identify the Copyright registration number or attach proof of same.  Plaintiffs' refusal to cooperate with SMS's search efforts or identify the copyright rights at issue hinders SMS's ability to discern Plaintiffs' theory of the case, no less understand Plaintiffs' demands for "related" or  potentially relevant documents.

> THE COURT:  . . .  **Has SMS been asked by anybody, the Government or 4DD, the number of copies that you installed at any point?**
>
> MR. GRIFFIN:          **No** . . . .
>
> THE COURT:  All right.  So, in effect, have you answered that question?
>
> MR. GRIFFIN:  Yes.
>
> THE COURT:  Okay.  Now, as to your most recent request for a protective order, Mr. Griffin, the – the argument is that, well, we just realized that the contracts for the period at – or contract or orders or whatever – for the period at issue incorporated CFR provisions than we were assuming were in place, and they give the Government more limited data rights or requests for data.  Is that, in effect, what you're saying?
>
> MR. GRIFFIN:   That's one of our arguments, yes, Your Honor.
>
> THE COURT:  What's the other one, that you've already answered the questions?
>
> MR. GRIFFIN:  We've already answered the question to the extent of our discovery obligations, and beyond, repeatedly, and –
>
> THE COURT:  Okay.  Is that on the assumption that the only relevant question is authorization and consent.  ***I'm not saying it's not, but –***
>
> MR. GRIFFIN:  Ah, it is every relevant document that we could find that could possibly relate to this case.  Now, based on the nature of SMS's involvement, ***the only documents we would have would be with regard to the question of installations and authorization and consent***. . . .  ***The only thing we would have is authorization, consent, and, by extension, installations . . . .***

Jan. 5 Tr. at 36:18 – 38:16 (emphases added).  Thus, the Court, the parties, and SMS all

understood that SMS had produced its documents relating to the authorization and consent issue,

as Plaintiffs and SMS had agreed and as the Court had ordered.  After this colloquy, the Court

again rejected SMS's speculation that SMS had not fulfilled its discovery obligations and

granted SMS's motion for a protective order.

The Court concluded the hearing by telling Plaintiffs to "leave Mr. Griffin [SMS] alone."

Jan. 5 Tr. at 75.  The same day, the Court issued a Protective Order stating:  "Plaintiffs may not

seek discovery in this case of any further documents from SMS or any of its affiliates directly or indirectly absent further order of the court."  Dkt. #99.

## II.     PLAINTIFFS HAVE MADE NO APPARENT ATTEMPT TO ADDRESS THE KEY ISSUES IN THIS CASE

On May 1, 2018 – four months after the January 5 hearing – Plaintiffs deposed SMS project manager Robert Matus for a full day.  At no point during the deposition did Plaintiffs ask Mr. Matus how many TETRA installations had occurred, nor did they ask any questions relating to authorization and consent.  Plaintiffs did not request any additional documents from SMS before or after the deposition.

On May 8, 2018, Plaintiffs conducted a full-day deposition of SMS engineer Regina Frost, who assembled the spreadsheet setting forth the 232 installations of TETRA software in the SMS environment.  R. Frost Depo. at 213:4 – 15 (attached as Exhibit C).  Despite Ms. Frost's knowledge of the TETRA installations, Plaintiffs did not ask about her preparation of the spreadsheet, the number of TETRA installations, or the authorization and consent issue.[3]  After the deposition, Plaintiffs did not request any additional documents from SMS.

On May 9, Plaintiffs deposed former SMS engineer Matthew Jenks for a full day. Again, Plaintiffs neglected to ask him how many TETRA installations had occurred in the SMS environment or elsewhere, nor did Plaintiffs inquire about authorization and consent.  Plaintiffs also did not ask Mr. Jenks a single question about the spreadsheet Ms. Frost had prepared.  After the deposition, Plaintiffs did not seek any additional documents from SMS after the deposition.

After these depositions, SMS decided to review its production again to ensure that it had produced all documents arguably relevant and responsive to the Subpoena, as amended through

---

[3] At one point, Plaintiffs' counsel asked:  "Did you input information into the Excel spreadsheet?" and Ms. Frost answered "Yes."  R. Frost Depo. at 213:22-24 (Ex. C).  This was the sum total of Plaintiffs' inquiry into the TETRA installation spreadsheet throughout all four depositions.

SMS's negotiations with Plaintiffs.  Even though SMS is not a party in the case, nor privy to Plaintiffs' theory of the case, SMS took the initiative to review the documents with the knowledge gleaned from the depositions to determine whether it possessed any arguably related documents that it had not produced.

SMS's voluntary review uncovered documents that seemed, at best, only tangentially relevant to the authorization and consent issue.  Many of these documents were emails on which Plaintiffs had been copied during the DMiX project, as well as other documents Plaintiffs had received during contract performance.  Nonetheless, in an abundance of caution, SMS prepared to produce these documents to Plaintiffs.

On June 5, 2018 – about a month after the SMS depositions – Plaintiffs wrote to SMS to demand the production of additional documents unrelated to the issues of authorization and consent.  Among the documents Plaintiffs demanded for "***all*** JIRA reports relating to the DMIX project," "***all*** records from any internal ticketing system relevant to the DMIX project," and an undefined number of unspecified emails.  June 7 email from R. Gilmore to S. Griffin (attached as Exhibit D) (emphases added).  SMS advised Plaintiffs that it was planning to make a small supplemental production, but declined to produce irrelevant business information for Plaintiffs' perusal – particularly in light of  Plaintiffs' propensity to seek irrelevant documents and their repeated admissions that they sought SMS's documents for use in their contemplated litigation against SMS.  Pl. First Mot. to Compel, filed January 6, 2017, at 4-5 (Dkt. #55); Ex. D.

On June 8, 2018, as promised, SMS produced additional documents resulting from its supplemental review.  Plaintiffs have never contended that these documents relate to the authorization and consent issue to which the Subpoena was limited, nor does it appear that

Plaintiffs have used any of these documents in any Court filing, hearing, deposition, or

mediation.

In their Motion, Plaintiffs represent to the Court that "SMS has offered no explanation"

for its supplemental production.  Mot. at 2.  In light of SMS's June 8, 2018 email to Plaintiffs'

counsel, it is difficult to perceive how Plaintiffs can justify this assertion.  As SMS explained on

June 8:

> Our initial search in 2016-17 was hampered by (1) 4DD's insistence that we
> produce nearly every business record in SMS's possession, regardless of its
> connection with Tetra or this litigation; and (2) 4DD's refusal to offer any
> guidance in recognizing and identifying potentially relevant documents, despite
> our repeated requests.  Similarly, before 4DD filed its third discovery motion
> against SMS, out of a spirit of cooperation and to try to understand 4DD's
> position, we asked you to specify documents relevant to this case that you thought
> our initial review might have missed.  S. Griffin November 14, 2017 email to R.
> Gilmore.  You refused to do so, and your refusal hindered us from identifying
> potentially relevant documents before the SMS depositions began.  In short,
> 4DD's determination to enforce an obviously overbroad subpoena, its failure to
> negotiate in good faith to narrow the subpoena's scope, and your refusal to help
> us recognize potentially relevant documents made our document review
> unnecessarily burdensome.  *See e.g.*, SMS's Opposition to Plaintiffs' Second
> Motion to Compel and Motion for Entry of a Protective Order, filed April 20,
> 2017, at 5; SMS's Motion for Protective Order, filed January 3, 2018, at 5-6.

Ex. D.  Moreover, despite Plaintiffs complaints to this Court, SMS further explained why it was

making the supplemental production:

> During the SMS depositions, however, we saw documents of the type that 4DD had
> refused to identify.  Consequently, on our own initiative, we decided to search our
> records again to ensure that we had fulfilled our discovery obligations completely.  Our
> review focused upon the issues of (1) authorization and consent and (2) installations of
> Tetra software.  Although the Court has repeatedly identified these issues as crucial and
> urged the parties to concentrate on them, 4DD gave these issues short shrift in its SMS
> depositions.
>
> Based upon our voluntary review, we anticipate making a small supplemental document
> production this week.  At best, these documents relate only tangentially to the issue of
> authorization and consent or Tetra installations.

Ex. D.[4]  Based on the foregoing, Plaintiffs lack evidentiary support for their misrepresentation regarding SMS's explanation.  RCFC 11(b)(3).

On July 24, 2018, Plaintiffs deposed SMS's corporate representative for a full day pursuant to Court of Federal Claims Rule 30(b)(6).  Plaintiffs focused on SMS's document retention policies and its document production.  SMS's corporate representative testified that SMS's production related to authorization and consent, pursuant to SMS's agreement with Plaintiffs:

> Q.   Did SMS use any additional terms . . . to search for documents to produce in response to the subpoena?
>
> A.   ***There was later correspondence between counsel . . . that also talk about authorization and consent, and the installation of TETRA.***
>
> Q.   So there are additional terms that SMS used . . . relating to authorization and consents [sic] and installations of TETRA?
>
> A.   Yes.

SMS 30(b)(6) Depo. at 101:10-22 (attached as Exhibit E) (emphasis added).

Concerned about Plaintiffs' lack of focus during the deposition, SMS's counsel assumed the responsibility of ensuring that the deposition transcript showed clearly that SMS had produced documents related to the authorization and consent issue.  SMS's counsel highlighted the scope of the production on cross-examination:

> Q.   Has SMS produced all documents responsive to the subpoena, consistent with the Court's orders in this case?
>
> MR. GILMORE: Objection, form, foundation, calls for a legal conclusion.

---

[4] Notably, Plaintiffs' response did not deny that they refused to provide the guidance SMS requested in locating relevant documents, nor did Plaintiffs offer any such guidance going forward.  Instead, Plaintiffs simply restated their disinclination to cooperate with SMS, exemplifying again their inclination to instead complain to the Court, incur fees, and add delay at SMS's expense.

MR. GRIFFIN:  You can answer.

THE WITNESS:  Yes, SMS has produced records in accordance with the Court's order to produce records consistent with authorization and consent.

EXAMINATION BY MR. GRIFFIN:

Q.      When you say authorization and consent, you mean . . . the Government's authorization and consent to TETRA copying –

A.      I'm sorry, yes, excuse me.  The Government's authorization and consent to the installation of TETRA licensing.

*Id.* at 196:21 – 197:16.

## III.   SMS OFFERED TO ACCEPT A SECOND SUBPOENA FROM PLAINTIFFS, BUT PLAINTIFFS HAVE IGNORED SMS'S OFFER

During a telephone conference on September 17 – two months after the corporate representative deposition and four months after the SMS individual depositions – Plaintiffs sought additional documents from SMS.[5]  Although Plaintiffs did not identify the documents they sought with reasonable specificity, they advised counsel of the broad categories, which are the same categories referenced in the Motion. These requests were and remain overly broad, indefinite, and outside the scope of the June 2016 subpoena altogether, including documents that Plaintiffs had already gathered from the Government and other sources.

SMS's counsel explained again that SMS had fulfilled all of its responsibilities pursuant to the June 2016 subpoena.  To try to put this issue to rest and cooperate with Plaintiffs' counsel, SMS's counsel suggested that Plaintiffs should issue SMS a new subpoena clearly specifying the documents it wanted, and SMS agreed to accept email service thereof.  September 21, 2018 email from S. Griffin to R. Gilmore and E. Meyers (attached as Exhibit F).  SMS made this

---

[5] Plaintiffs raised a vague complaint about the SMS document production in an email on July 27 but waited until September 17 to schedule a call to discuss.

request despite the protection it enjoyed from the Court's January 5 Order prohibiting Plaintiffs from obtaining any further discovery absent Court Order – merely to attempt to work with Plaintiffs in a professional manner.  Dkt. #99.

Instead of issuing the subpoena SMS suggested, Plaintiffs sent SMS an email demanding an overly broad array of documents, many of which were in Plaintiffs' possession and which Plaintiffs had used while deposing SMS personnel.  September 20, 2018 email from R. Gilmore to S. Griffin (attached as Exhibit F).  In response, SMS offered again to accept email service of a subpoena setting forth Plaintiff's document requests, so it could understand the document requests and work with Plaintiffs in good faith to produce the relevant, non-privileged documents Plaintiffs sought.  As SMS explained in a later email:

> During that [September 17] call, in the spirit of cooperation, we explained to you that, if you wanted to determine whether SMS had other potentially relevant documents, you should issue SMS a new subpoena describing *with particularity* the documents you wanted, and we even agreed to accept email service of such a subpoena on SMS's behalf. . . .  Issuing a new subpoena would have required less effort than drafting your email threatening further motions.  Yet, despite our exhaustive efforts at cooperation, we again find ourselves the target of another fruitless letter-writing campaign.

Ex F.  Rather than issuing the suggested subpoena, Plaintiffs sought Court intervention with respect to SMS for a fourth time on October 2 – several weeks after the September 17 telephone conference.  For at least the third time, Plaintiffs allege, without evidence, that SMS has documents that it failed to produce in response to its original 2016 Subpoena.  Plaintiffs did not accept or reject SMS's offer until October 9, the day SMS's response to Plaintiffs' Motion was due – at which point Plaintiffs rejected the offer.  Ex. H.

This has gone far enough.  Plaintiffs have delayed prosecuting their case for months at a time, and their delays have necessitate *six* extensions of the discovery deadline.  (Dkt. ##50, 72,

92, 105, 116, 123.)  With each discovery motion, Plaintiffs seem to blame SMS for their own

delays advancing their case against the Government.  Plaintiffs have punctuated their

lackadaisical litigation of this matter with baseless, fruitless discovery motions against SMS, a

non-party, to enforce a 2016 Subpoena that SMS fulfilled long ago, in an attempt to obtain

documents they either already have or do not need.  With respect to SMS, Plaintiffs' efforts long

ago transitioned from discovery to annoyance to oppression, and SMS requires Court

intervention to protect it from further expenditures of time and money for a case to which it is

not a party.  RCFC 26(c)(1) ("The Court may, for good cause, issue an order to protect a party or

person from annoyance . . . oppression, or undue burden or expense.").[6]  Therefore, SMS

respectfully requests a protective order providing that no further discovery be had from SMS and

for sanctions against Plaintiffs for the costs imposed by Plaintiffs' Motion.

<u>**ARGUMENT**</u>

**I.    SMS HAS FULFILLED ITS DUTY TO PRODUCE ALL DOCUMENTS IN ITS
POSSESSION, CUSTODY, OR CONTROL RELATING TO AUTHORIZATION
AND CONSENT**

As SMS has stated consistently, and this Court has repeatedly agreed, SMS has fulfilled

its duty to produce all documents in its possession, custody, or control relating to authorization

and consent, in according with the Court's July 26, 2016 Discovery Scheduling Order and SMS's

agreement with Plaintiffs.  Dkt. #99.  Since receiving the production, Plaintiffs have repeatedly

asserted, without evidence, that SMS has additional, relevant, unproduced documents.  Yet,

despite three years of discovery, including discovery from the Government and numerous third

parties, Plaintiffs have not uncovered evidence of a single unproduced document from SMS that

---

[6] The nature of the documents Plaintiffs request shows that the documents Plaintiffs seek are not
likely to lead to the discovery of other relevant information and are burdensome to SMS.  Most,
if not all, of the documents are in Plaintiffs' possession (category 1) and for the others, SMS fails
to see how SMS would have documents related to any allegations of improper downloads in the
government's environment, because SMS did not have access to that environment (category 2).

relates to the authorization and consent issue. For the third time, Plaintiffs offer the Court nothing but speculation regarding SMS's possession of additional unproduced documents, and this speculation cannot support Plaintiffs' Motion. *E.g.*, *A-1 Cigarette Vending, Inc. v. United States*, 49 Fed. Cl. 345, 359 n.17 (2001); *Harris v. Koenig*, 271 F.R.D. 356, 370 (D.D.C. 2010) ("I cannot compel what does not exist. If plaintiffs are speculating that documents responsive to these requests do exist, there must be a reasonable deduction that that is true, and not a mere hunch."); *Susko v. City of Weirton*, No. 5:09-CV-1, 2011 U.S. Dist. LEXIS 3134, at *14 (N.D. W.Va. Jan. 12, 2011) ("This Court cannot compel a party to produce documents based solely on opposing speculation and belief that responsive documents exist and that the producing party is withholding them."); *Martin v. Fort Wayne Police Dept.*, 2012 WL 5878874 at * 1 (N.D. Ind. Nov. 21, 2012); *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 436 (S.D.N.Y. 2011).

Bizarrely, Plaintiffs' grievance appears to center around the fact that SMS "has produced . . . documents limited to SMS's interpretation of the authorization and consent issue, despite its representations to the Court to the contrary." Mot. at 1. In light of the lengthy record before the Court, it is difficult to perceive a good-faith basis for Plaintiffs' mischaracterization of SMS's representations. Indeed, both SMS ***and the Plaintiffs themselves*** have repeatedly represented to the Court their agreement that SMS would limit its production to the authorization and consent issue. Such representations include, but are not limited to:

- The October 21, 2016 email memorializing Plaintiffs' agreement with SMS to seek only "documents relating to the issue of authorization and consent." Oct. 21 email from S. Griffin to W. Jackson (Ex. A) (also attached to SMS Opp. To Pl. Second Mot. to Compel).

- Plaintiffs' first motion to compel against SMS, wherein it represented to the Court that they would limit their discovery against SMS to the "central issue" of authorization and consent. First Mot. to Compel at 4, 6-8 (Dkt. #55).

- Another statement in Plaintiffs' first motion to compel against SMS, wherein Plaintiffs stated: "SMS has repeatedly indicated that at this stage of the litigation it will only produce information addressing that issue [of authorization and consent]." *Id* at 8.

- SMS's opposition to Plaintiffs' second motion to compel, wherein SMS advised the Court of "Plaintiffs' representation that they will not seek discovery from SMS other than that relating specifically to authorization and consent." SMS Opp. to Second Mot. to Compel at 9 (Dkt. #71).

  - Plaintiffs have never disputed or otherwise attempted to correct this statement

- Another statement in SMS's second opposition, wherein SMS stated that it had produced "all responsive non-privileged documents relevant to the authorization and consent issue." *Id.* at 10.

- Yet another statement in the same opposition, wherein SMS stated: "SMS searched its documents using the search terms that Plaintiffs suggested and produced any documents that relate to the issue of 'authorization and consent.'" *Id.* at 10; *see also id.* at 12 (noting that SMS acted "promptly" to "limit Plaintiff's discovery to the authorization and consent issue, and Plaintiffs explicitly conceded that limitation on its discovery in its filings with the Court.").

- Plaintiffs' reply brief regarding their second motion to compel, wherein they acknowledged that SMS's "phrasing makes it clear that SMS narrowed the collection of responsive document to just those 'relevant to the authorization and consent issue' . . . ." Reply to 2d Motion to Compel at 3 (Dkt. #73).

- Another statement in Plaintiffs reply brief, wherein Plaintiffs represented that "SMS produced to Plaintiffs . . . documents bearing on 'the issue of whether SMS and/or any other contractor of the Government received the Government's **authorization and consent** to make copies of Plaintiff's TETRA software.'" *Id.* at 1 (emphasis added).

- SMS's January 2018 motion for protective order, which stated: "Plaintiffs agreed to restrict their discovery to the issue of authorization and consent to install the software." SMS Mot. Protective Order at 2 (Dkt. #98).

  - Again, Plaintiffs never disputed or otherwise objected to this characterization.

- SMS's January 5, 2018 statement to the Court: "[T]he only documents we would have would be with regard to the question of authorization and consent." Jan 5. Tr. at 38:14-16.

- ▪ Significantly, Plaintiffs did not respond to counsel's statement with a recitation of documents in SMS's possession outside the authorization and consent context that would be relevant to this case.  In fact, Plaintiffs made no attempt to dispute or correct this statement.  Instead, they remained silent.  Not until now – ten months after this colloquy – do Plaintiffs first articulate document requests that they contend seek relevant evidence, and none of them relate to authorization and consent.

Against this undisputed record, Plaintiffs now represent to the Court that SMS's counsel stated that SMS's production went beyond the authorization and consent issue.  It is difficult to perceive how Plaintiffs can maintain this argument consistent with the record above and their obligations under Rule 11(b).  The record shows clearly that Plaintiffs agreed to limit the Subpoena to authorization and consent.  Had SMS known that Plaintiffs would spend years construing its production as an ongoing duty to periodically produce vague and unspecified documents at Plaintiffs' whims, for years on end, SMS would have filed a motion for protective order or to quash from the start.

Plaintiffs also suggest that SMS was obligated to supplement its February 2017 production when the Court lifted the authorization and consent limitation in October 2017.  This is wrong for three reasons.  First, the Court already rejected this contention earlier this year, when it granted SMS's motion for a protective order.  Dkt. #99.  Second, the authorization and consent limitation came not only from the Court's Discovery Scheduling Order, but from Plaintiffs' written agreement with SMS, and the amendment of the Discovery Scheduling Order did not amend Plaintiff's agreement with SMS without SMS's consent.  Ex. A.  Finally, the law is clear that "a non-party served with a subpoena *duces tecum* is under no duty to supplement its discovery responses . . . ."  *Alexander v. FBI*, 192 F.R.D. 37, 38 (D.D.C. 2000); *erinMedia, LLC v. Nielsen Media Research, Inc.*, No. 8:05-CV-1123-T-24EAJ, 2007 U.S. Dist. LEXIS 51342 (M.D. Fla. July 3, 2007) at *12-13; see also RCFC 26(e) (imposing supplementation duties on

parties but not non-parties).  If Plaintiffs wanted to seek documents other than those it sought

pursuant to the June 2016 subpoena, they should have issued a second subpoena, as SMS invited

it to.  *Alexander*, 192 F.R.D. at 38.

## II.   SMS HAS OFFERED TO ACCEPT A NEW SUBPOENA WITHOUT THE AUTHORIZATION AND CONSENT LIMITATION, BUT PLAINTIFFS HAVE NOT ACCEPTED THE OFFER

Plaintiffs' Motion seeks an Order "permitting Plaintiffs to serve a new subpoena – but

with a direction to SMS to produce all remaining relevant documents that it has withheld."  Mot.

at 5.[7]  This request is puzzling, because SMS has repeatedly offered to accept a new subpoena

from Plaintiffs without the authorization and consent limitation.  As subpoenas generally impose

a responsibility to produce relevant, non-privileged documents, RCFC 45(a)(1)(D), an order

repeating that requirement is unnecessary.  In light of SMS's offer to accept a second subpoena,

Plaintiffs' motion represents a waste of the time and money of the Court and the parties.

Plaintiffs' gamesmanship becomes even more apparent in light of their actions after filing

the instant Motion.  After receiving the Motion, SMS invited Plaintiffs ***for a third time*** to issue

SMS a subpoena specifying the documents it sought.  SMS's email to Plaintiffs stated:

> Your motion for a discovery conference asks the [C]ourt to "permit[] Plaintiffs to serve a new subpoena."  During our September 17 call, we explicitly suggested that you serve a new subpoena and agreed to accept email service thereof, as memorialized in our September 21 email.  Can you please explain why 4DD needs a Court hearing to get the relief that SMS has already offered in writing?  Otherwise, given that we apparently agree that a new subpoena would resolve 4DD's outstanding issues, we could save the Court and the parties a lot of time and expense if you would simply withdraw your motion and issue us a new subpoena.

---

[7] In the alternative, Plaintiffs identified two categories of documents which SMS offered to produce, to the extent it understood the request and to the extent responsive, non-privileged documents existed, and it offered to work with counsel in good faith to understand the requests (some of which were vague, e.g., "related documents").

October 3, 2018 email from S. Griffin to R. Gilmore and E. Meyers (attached as Exhibit G).

Because SMS did not receive a reply, SMS followed this email with another, wherein SMS wrote:  "We can commit to working with you in good faith to understand your document requests and to produce the non-privileged documents requested . . . . ***We suggest you email us a subpoena***, and we can discuss it later this week at your convenience."  Ex. G (emphasis added).

Plaintiffs did not respond to this email, so SMS wrote again.  SMS's email stated:

> We have not heard from you since we sent you the email below yesterday. Please let us know whether Plaintiffs accept SMS's suggestion that Plaintiffs issue SMS a new subpoena and withdraw its pending motion. Otherwise, SMS will have no alternative to move for a protective order and for sanctions.
>
> It seems more productive for us to discuss discovery going forward rather than argue about SMS's document production in the past. We hope you agree.

October 4, 2018 email from S. Griffin to R. Gilmore and E. Meyers (attached as Exhibit H).

On October 9 – SMS's deadline for filing this Motion for Protective Order – Plaintiffs finally responded to SMS's request.  Again, instead of making an effort to narrow or further define their document requests, or issuing SMS the subpoena that they seek in their Motion, Plaintiffs again demanded that SMS's submit to Plaintiffs' vague, broad, burdensome demands:

> SMS should produce the documents we have identified and requested multiple times, including in our most recent correspondence with you and in our filing with the Court.  Those documents indisputably are relevant and responsive to Plaintiffs' existing subpoena.  SMS's insistence on receiving a second subpoena –

without a commitment to producing *any* documents in response to a second subpoena – is without merit and appears calculated to delay discovery once again.

Ex. H.  Plaintiffs' unreasonable demand for the Court to enforce a document request that they refuse to serve despite repeated invitations to do so further demonstrates SMS's need for protection from further annoyance and oppression.  SMS respectfully requests a protective order and sanctions for this purpose.  RCFC 26(c)(1).

### III.    BY THEIR OWN ADMISSION, PLAINTIFFS CAN AND SHOULD GET WHATEVER DOCUMENTS THEY NEED FROM THE GOVERNMENT

Rule 26 provides:

[T]he court *must* limit the frequency or extent of discovery otherwise allowed by these rules if it determines that:

(i) the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive [or]

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action . . . .

RCFC 26(b)(2)(C) (emphasis added).

In their August 14 status report, Plaintiffs represented to the Court:  "There is no question that the Government has been and remains in the best position to know how many copies of Plaintiffs' software were installed for the DMiX project."  Joint Status Report, filed August 14, 2018 at 9 (Dkt. #121).  Plaintiffs have thus conceded that "the discovery sought . . . can be obtained from some other source" – that is, the Government – and that the Government, not SMS, is "in the best position" to provide this information.  Based upon Rule 26 and Plaintiffs' concession, SMS respectfully requests the Court to issue an Order providing that no further

discovery be had from SMS, thus confirming its January 5 Order for Plaintiffs to "leave Mr.

Griffin [SMS] alone" and the already existing protective order.  Dkt. #99; RCFC 26(c)(1)(A).

## IV.    PLAINTIFFS ALREADY HAVE MANY OF THE DOCUMENTS THEY ARE ASKING SMS TO PRODUCE

Plaintiffs' Motion apparently requests an Order compelling SMS to produce "all

documents introduced as exhibits at the depositions of SMS current and former personnel."  Mot.

at 3.  Plaintiffs do not explain why the Court should put SMS through the time and expense of

producing documents they already have, particularly when they have already used those

documents to depose SMS personnel.

Regardless, the Rules foreclose this request.  Rule 26 provides that "the court *must* limit"

discovery if "the discovery sought is unreasonably cumulative or duplicative . . . ."  RCFC

26(c)(2)(C) (emphasis added).  Plaintiffs' request for documents already in their possession is the

very definition of "cumulative or duplicative," and it exemplifies well the annoyance and

oppression that Plaintiffs have imposed upon SMS throughout this litigation.  On this ground,

SMS respectfully requests the Court to issue an Order providing that SMS need not produce

documents that Plaintiffs already possess from other sources.[8]

## V.    PLAINTIFFS SEEK IRRELEVANT DOCUMENTS

Plaintiffs' Motion seeks to compel SMS to produce documents well outside the

authorization and consent issue.  Indeed, most of these documents do not bear any apparent

relation to this litigation at all.  Plaintiffs' Motion seeks:

---

[8] Despite this limitation, SMS also detailed that it has undergone several changes in ownership, including one that predated knowledge of this lawsuit and coterminous with the expiration of the DMiX contract, where the new entity had short document preservation periods.  Ex. E.  Thus, it is not surprising that SMS might not have the documents Plaintiffs seek.  Despite this, SMS advised that, as of the October 2015 date Plaintiffs advised SMS of the litigation, SMS immediately preserved any documents still in its possession.

- "emails and documents from SMS that the Government itself produced in discovery" (Mot. at 2.)[9]
- "internal-side email communications concerning emails sent to or received from the Government"  (Mot. at 2.)
- "drafts of reports made to the Government" (*Id.* at 2.)
- "all documents introduced as exhibits at the depositions of SMS current and former personnel" (*Id.* at 3.)
- "all documents related to [deposition] exhibits (*Id.* at 3.)
- "internal emails concerning materials, information, or conversations exchanged with the government reflected in the exhibits" (*Id.* at 3.)
- "a complete production of JIRA and any other ticketing system that SMS used on the DMiX project for the installation, cloning, movement, or deletion of 4DD's TETRA software or virtual machines that would have contained TETRA" (*Id.* at 3.)

These requests seek documents unrelated to this litigation.  Plaintiffs' requests for "email and documents from SMS," for "drafts of reports made to the Government," and for "internal-side email communications concerning emails sent to or received from the Government" calls for every document SMS generated or received with respect to any government contract that SMS has ever had, without any limitations as to time or contract.

Plaintiffs' request for the "complete production of . . . [any] ticketing system" encompasses an even broader array of irrelevant documents.  In software terms, a ticketing system "is a computer software package that manages and maintains lists of issues."[10]  An "issue," in turn, "is a unit of work to accomplish an improvement in a system," such as "a bug, a

---

[9] As a non-party, SMS has no way of knowing what documents "the Government itself produced in discovery," nor can SMS divine what documents Plaintiffs consider "related to" the deposition exhibits.  Like most of Plaintiffs' demands, this request lacks sufficient specificity to enable SMS to respond.  Furthermore, Plaintiffs' argument that the Subpoena included deposition exhibits defies logic, because Plaintiffs had not designated any documents as deposition exhibits when they served the Subpoena.

[10] Wikipedia, Issue Tracking System, https://en.wikipedia.org/wiki/Issue_tracking_system (last visited October 9, 2018).

requested feature, task, missing documentation, and so forth." [11]  Thus, through this request,

Plaintiff seeks the production of all documents relating to any bug, requested feature, task,

operating system change, missing documentation, or other issue that occurred on any machine on

which TETRA was stored, whether or not the issue involves TETRA, copyright infringement, or

any other issue relevant to this case.  Essentially, Plaintiffs demand a massive, burdensome

production of irrelevant documents that, taken together, would lay out a roadmap to SMS's

computer system to one of its business competitors.  This is far beyond what this case requires

and the law allows.

Plaintiff's pursuit of these irrelevant documents raises suspicion.  If, as their Complaint

alleges, Plaintiffs' case focuses the alleged infringement that the Government may have done in

its environment – an environment to which SMS did not have access on its own – then Plaintiffs

should not need any of SMS documents, which relate only to SMS's environment.  Am. Compl.

¶ 1 ("*The United States of America* . . . has infringed, and continues to infringe, the copyrights

of Plaintiffs . . . .") (emphasis added); August 14 Joint Status Report at 9 (Plaintiffs'

representation that "[t]here is no question that *the Government* has been and remains in the best

position to know how many copies of Plaintiffs' software were installed for the DMiX project.")

(emphasis added); Jan. 5 Tr. at 34:10-14 ("With respect to the DTC environment, SMS was in

the dark, too . . . once we handed the material over to the Government, the Government did what

they did with it to my understanding.") (statement by Mr. Griffin).  That Plaintiffs so persistently

seek so many obviously irrelevant documents indicates that Plaintiffs desire them for purposes

---

[11] Wikipedia, Software Project Management,
https://en.wikipedia.org/wiki/Software_project_management#Issue (last visited October 9,
2018).

other than this litigation – as Plaintiffs have previously admitted to this Court.  *See generally* Dkt #71 Ex. 6; Pl. Mot. to Compel Discovery at 4-5 (Dkt. #55).

To the extent that Plaintiffs require additional documents relevant to this litigation, the appropriate method for obtaining them is a subpoena.  RCFC 45.  Plaintiffs willingness to file the instant Motion rather than draft an appropriate subpoena shows clearly SMS's need for a protective order to shield it from further annoyance, oppression, and harassment.  RCFC 26(c)(1).

## VI.    PLAINTIFFS HAVE UNDULY DELAYED IN FILING THEIR MOTION

With respect to SMS, Plaintiffs have not prosecuted this case diligently.  As described previously, Plaintiffs' conduct in this litigation has included, but is not limited to the following delays with respect to SMS:

- A three-month delay for document production due to Plaintiffs' attempt to renege on the agreed-upon protective order (November 4, 2016 – February 3, 2017);
- An 10-month delay between Plaintiffs' receipt of SMS's documents to Plaintiffs' next discovery motion with respect to SMS's production (February 3, 2017 – December 12, 2017);
- A four-month delay between the Court's granting SMS's motion for a protective order and Plaintiffs' beginning SMS depositions (January 5, 2018 – May 1, 2018);
- A two-month delay between Plaintiffs' deposition of SMS's corporate representative and Plaintiffs' renewed attempt to obtain irrelevant documents from SMS (July 24, 2018 – September 17, 2018);
- A two-week delay between Plaintiffs' conversations with SMS regarding its document production and Plaintiffs' latest discovery motion (September 17, 2018 – October 2, 2018).[12]

---

[12] Plaintiffs' delays appear to have contributed to the numerous extensions in this case. According to the Court docket, the discovery deadline has been extended six times – from May 19, 2017 to November 14, 2018.  (Dkt. ##50, 72, 92, 105, 116, 123.)  This Court has also observed Plaintiffs' never-ending quest for more documents, while Plaintiffs have admitted the lack of diligent review and the failure to get to the salient issue before the Court – how many unauthorized copies has the Government (not SMS) made.  Jan. 5. Tr. at 5-7.

Plaintiffs' delays extend to the filing of their Motion.  By Plaintiffs' own chronology, they waited several months after taking SMS's 30(b)(6) deposition to seek Court relief, even though they claim to have known then that SMS was supposedly withholding documents.  Mot. at 3.  Plaintiffs have offered no explanation for their procrastination, and this delay alone would justify rejecting Plaintiffs' requests.  *E.g., Packman v. Chi. Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001) (affirming denial of motion to compel due to plaintiff's delay); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 341 (N.D. Ill. 2005) (denying plaintiffs' motion to compel due to plaintiffs' delay while motion to dismiss pending).

In light of Plaintiffs' extensive delays, the Court should not reward Plaintiffs' languor by entertaining their late, unfounded Motion, which can only be construed as another tactic to add further delay at SMS'S expense.  To further protect SMS from this ongoing harassment, SMS also requests that the Court not permit additional depositions of SMS witnesses who have already been deposed.

## VII.   PLAINTIFFS' GAMESMANSHIP IN CONDUCTING DISCOVERY AGAINST SMS AMOUNTS TO HARASSMENT, AND THE COURT SHOULD IMPOSE SANCTIONS UPON PLAINTIFFS ACCORDINGLY

After three years of discovery, four discovery motions against SMS (and more against other non-parties), six discovery extensions, and numerous depositions, this case is no closer to resolution than when Plaintiffs filed their Complaint.  Plaintiffs bear the primary responsibility for this failure to proceed.  Although Plaintiffs have represented to the Court that authorization and consent is the "central issue" in this case, Plaintiffs did not ask a single SMS witness about whether the Government had authorized or consented to any TETRA installations or the number of TETRA installations that had occurred.  Dkt. #55 at 5 (Pl. First Mot. to Compel).  Even when Plaintiffs deposed Regina Frost, the author of the spreadsheet showing the 232 TETRA

25

installations in the SMS environments, they failed to inquire meaningfully about the issue.  To this day, it appears that Plaintiffs have no idea how many authorized or unauthorized TETRA installations have occurred – primarily because they have bypassed several opportunities to ask.

As of this date, complying with Plaintiffs' aimless, overbroad discovery requests has cost SMS, a non-party, substantial costs, including attorneys' fees.  Responding to Plaintiffs' improvident Motion will add to this cost, and two years after receiving the Subpoena, SMS can see no end in sight.  Merely denying Plaintiffs' discovery motions has done nothing to alter Plaintiffs' annoying, oppressive, costly conduct toward SMS.  The time has come for the Court to impose discipline upon Plaintiffs.  If the Court does not put an end to this, SMS will incur ever greater costs and Plaintiffs will continue with their never-ending quest for more SMS documents – either for this litigation or their planned future litigation against SMS.  Therefore, SMS respectfully requests the Court to issue an order awarding it the costs of responding to this discovery motion, including attorneys' fees.  RCFC 26(c)(3); 37(a)(5).

## CONCLUSION

For the foregoing reasons, third-party SMS respectfully requests the Court to issue an order providing that no further discovery be had against SMS and for sanctions.

Respectfully submitted,

 _s/ Sean C. Griffin_
JENNIFER FRASER
SEAN C. GRIFFIN
DYKEMA GOSSETT PLLC
1301 K Street, NW, Suite 1100 West
Washington, DC  20005
Telephone:     (202) 906-8703
Facsimile:      (855) 256-1480
jfraser@dykema.com
sgriffin@dykema.com
COUNSEL FOR SYSTEMS MADE SIMPLE, INC.

26

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 9, 2018, a copy of the foregoing and all attachments thereto were filed electronically with the Clerk of Court using the ECF system, which will send notifications to all ECF participants.

<u>/s/ Sean C. Griffin</u>